## TEXAS PRUDENTIAL INS. CO. v. PADGETT et al.

### No. 2024.

Court of Civil Appeals of Texas. Waco.

Oct. 13, 1938.

Thompson, Knight, Baker, Harris & Wright and James E. Henderson, all of Dallas, for appellant.

John G. Whitaker, of Dallas, for appellees.

GEORGE, Justice.

This is a suit by Mollie and Will Padgett, appellees, against Texas Prudential Insurance Company, appellant, on a policy of insurance issued under date May 20, 1912, to their daughter, Maggie Irene Padgett, insured, and Mollie Padgett, beneficiary. The

trial was before the court and jury and on answers of the latter to special issues, judgment was entered in favor of appellees; hence this appeal by appellant.

Appellees, on May 20, 1912, took out policies of insurance on themselves and their two daughters, Winnie Mae and Maggie Irene, in the same company, and on December 24, 1917, took out another policy on Maggie Irene. The weekly premium on each of Maggie Irene's policies was 10 cents. Appellees in the trial of the case insisted that all premiums on all policies were paid to May 20, 1923, and appellant contended that the policy dated December 24, 1917 was substituted, so far as the payment of premiums was concerned, for the policy of 1912. If the weekly premiums on the policy of 1912 were paid to May 20, 1923, then the policy was in full force and effect at the time of the death of Maggie Irene Padgett on February 18, 1935, by virtue of its automatic extended insurance provision. The jury found that premiums were paid each and every week on both of the policies from the date of their respective issue until May 20, 1923.

Appellant says (1) that the testimony of Mollie Padgett establishes as a matter of law the ultimate fact that the payment of premiums on the 1912 policy was discontinued on December 24, 1917, when the second policy was issued, and that the trial court erred in overruling its motion for instructed verdict; (2) that the findings of the jury that the premiums were paid on both policies are in irreconcilable conflict and no judgment should have been entered; and (3) that plaintiffs were not entitled to recover because the undisputed evidence showed failure to surrender the policy and failure to deliver the receipt book.

Mrs. Padgett, on the trial of the case, testified that she paid $2 every two weeks on the policies; that the insurance man got the receipt book in 1923 for the purpose of letting them have some money on the policies; that all of the premiums were paid up in full at that time; that the amount of premiums on those policies was the same from the time they were first issued in 1912 until 1923; that she owed $2 every two weeks; that she would sometimes pay $2 and at other times pay $2.50 to get ahead; that they took out policies on herself, her husband, Winnie Mae and Maggie Irene in 1912; that she owed $2 every two weeks on those four policies, and that she kept on owing $2 every two weeks on the four poli-

cies until she quit paying in 1923; that she did not drop this policy taken out in 1912 until they came and got her book; that she made application for the 1917 policy and the insurance man brought it to her; and she testified by deposition that she paid $2.50 every two weeks on the insurance from 1912 until the man got their book; that not any of those policies could have been lapsed or swapped up to the time the man got the receipt book. Will Padgett testified, on the trial of the case, that he left the paying of the premiums on the policies to his wife; that they paid the premiums on both the 1912 and 1917 policies until 1923; that they paid $2 every two weeks, and that the reason they could pay the same amount of premiums from 1912 to 1923 was that they lost a daughter the year of the War, and that made their insurance tally all along; that they paid 20 cents per week all told on Maggie Irene's insurance; that it was increased 10 cents per week when the 1917 policy was taken out; that it was before that about $1.80; that they were paying $2 every two weeks in 1923; that if he testified in his deposition that they did not pay on both the 1912 and 1917 policies until 1923, that the 1917 policy was issued to take the place of the 1912 policy, and that after the 1917 policy was handed to him, he no longer made any payments on the 1912 policy, that they continued to pay only 10 cents per week on his daughter's policy from 1912 until they stopped paying, then he did not understand their questions and was mistaken in his answers.

Appellant bases its contention that the evidence shows as a matter of law discontinuance of payment of premiums on the 1912 policy in 1917 on the testimony of Mrs. Padgett that the amount of the premiums in effect remained the same from 1912 to 1923, and that such testimony constitutes an admission of such ultimate fact, and that she is conclusively bound thereby, and cites in support thereof the case of J. R. Watkins Co. v. King, Tex.Civ.App., 83 S.W.2d 405, and cases therein cited. A careful examination of the entire record discloses that appellees were unlettered; that they were testifying as to matters that transpired from twelve to twenty-five years prior; that they had taken out a number of policies of insurance on members of their family in different companies; that no direct inquiry was made of Mrs. Padgett as to the amount or manner of the payment of any premiums on the 1917 policy; that practically all

questions asked her in reference to the payment of premiums and the amount thereof were in connection with the original policies that were issued in 1912, and that she did not fully understand the purport of many of the questions propounded her. Appellee Will Padgett explains the contradictions between his testimony given on the trial and that of the deposition, and no contention is here made that appellees are conclusively bound by any testimony given by Will Padgett. The statement several times repeated by Mrs. Padgett that the premiums on those policies remained the same from 1912 to 1923, at the most, renders her testimony ambiguous and susceptible of different interpretations and thereby raises a jury question as to the meaning of the testimony. Buchanan v. Davis, Tex. Com.App., 15 S.W.2d 562; Straka v. Farmers' Mutual Prot. Ass'n, Tex.Civ.App., 79 S.W.2d 883; Funk v. Miller, Tex.Civ. App., 142 S.W. 24; Southwestern Portland Cement Co. v. Kezer, Tex.Civ.App., 174 S.W. 661; Childers v. Texas & N. O. Ry. Co., Tex.Civ.App. 89 S.W.2d 478. It is the general rule that upon a motion for a directed verdict, the plaintiff is entitled to have the case considered upon that interpretation of the evidence which is most favorable to him. Wininger v. Fort Worth & D. C. Ry. Co., 105 Tex. 56, 143 S.W. 1150. And whether or not appellees discontinued payment of premiums on the 1912 policy, when the 1917 policy was issued, depends on the inference to be drawn from all the facts and surrounding circumstances in evidence. Wiggins v. Holmes, Tex.Civ.App., 39 S.W. 2d 162; Stooksberry v. Swann, 85 Tex. 563, 22 S.W. 963.

The findings of the jury are not in real and irreconcilable conflict for the reasons the pleadings joined only the issue of payment of premiums on the 1912 policy, and the evidence tends to support both findings, and both findings could be true under the evidence. Belzung v. Owl Taxi, Tex. Civ.App., 70 S.W.2d 288; McGinness v. Cruse-Oille Motor Co., Tex.Civ.App., 26 S.W.2d 1095; Manlove v. Lavelle, Tex. Civ.App., 235 S.W. 324.

Appellant, in its plea in abatement, alleged that appellees had not furnished due proofs of death of the insured and had not surrendered the policy and all receipt books, and that therefore according to the provisions of the policy, nothing was payable by defendant. The policy, among other things, contained the following provisions:

"In consideration of the payment of the premium mentioned in the schedule below, on or before each Monday, doth hereby agree * * * to pay upon receipt of due proofs of the death of the insured and upon surrender of this policy and all receipt books the amount stipulated in said schedule.

"Proofs of death under this policy shall be made upon blanks to be furnished by the company and shall contain answers to each question propounded to the claimants, physicians and other persons, and shall contain the record, evidence and verdict of the coroner at his inquest, if any be held.

"No action at law under this policy shall be maintained against the company, unless. brought within two years following the death of the insured."

The policy contained neither provision as to the time within which proofs of death should be furnished nor when suit could be commenced thereon. The provisions of the policy, construed in connection with the provisions of Articles 4733 and 4736, R.S., show that it was the intent of appellant, in preparing the contract of insurance, to make the accrual of the cause of action on the policy to commence upon the death of the insured. It is admitted that proofs of death and demand for payment of the amount of the policy were made prior to the institution of suit and that the policy was tendered in court upon the trial of the cause. Appellees testified that the receipt book could not be found and that same had been taken up by an agent in 1923. The question whether due proofs of the death of the insured and surrender of the policy and all receipt books had been made presented only matters in abatement and the evidence thereon supported the court's action in overruling same. Humphrey v. National Fire Ins. Co. of Hartford, Tex.Com.App., 231 S.W. 750; Philadelphia Underwriters' Agency v. Driggers, 111 Tex. 392, 238 S. W. 633.

The judgment of the trial court is affirmed.