**TEXAS DEPARTMENT OF PUBLIC SAFETY, Appellant,**

v.

**Rhonda Darling ROLFE, Appellee.**

**No. 03–98–00220–CV.**

Court of Appeals of Texas, Austin.

March 11, 1999.

Kevin M. Givens, Texas Dept of Public Safety, Supervision Atty., ALR Appeals, Austin, for Appellant.

Keith S. Hampton, Austin, for Appellee.

Before Justices JONES, B.A. SMITH and YEAKEL.

JONES, Justice.

The Texas Department of Public Safety ("Department") appeals a final order of the Travis County Court at Law reversing an administrative decision, entered after a contested-case hearing, authorizing the suspension of appellee Rhonda Darling Rolfe's driver's license. We will reverse the judgment of the county court at law and affirm the administrative decision.

## FACTUAL AND PROCEDURAL BACKGROUND

In September 1997, Officer Mark Herring of the Austin Police Department responded to a traffic accident in which Rolfe was involved. During his investigation of the scene, Herring noticed Rolfe exhibiting several known indicators of intoxication. He asked Rolfe to perform three field sobriety tests, assessed her performance on these tests as "poor," and placed her under arrest for driving while intoxicated.

During the drive to the police station, Herring asked Rolfe if she intended to submit to an intoxilyzer test, and she indicated she would do so. Once at the station, Herring orally read Rolfe the statutory warnings required by section 724.015 of the Transportation Code and provided her with a written copy of the warnings prior to requesting a breath specimen. *See* Tex. Transp. Code Ann. § 724.015 (West 1999) (mandating information to be provided by officer prior to requesting specimen from person arrested for driving while intoxicated). Rolfe then provided two breath specimens, both showing concentrations of alcohol in excess of the statutory limit.

As a result of the breath-specimen results, Rolfe's driver's license was automatically suspended. *See* Tex. Transp. Code Ann. § 524.012 (West 1999) (directing when Department must suspend driver's license for driving while legally intoxicated). Rolfe requested a hearing on the suspension before an administrative law judge ("ALJ") from the State Office of Administrative Hearings. Following an evidentiary hearing, the ALJ entered a decision sustaining the license suspension, which Rolfe then appealed to the Travis County Court at Law ("reviewing

court"). Rolfe argued that the intoxilyzer results were improperly admitted at the hearing before the ALJ because her consent to take the breath test was invalidated by a coercive extra-statutory statement made by Officer Herring regarding the consequences of failing to give a specimen. Acting in an appellate capacity, the reviewing court reversed the administrative decision and set aside the order authorizing the suspension of Rolfe's driver's license.

The Department appeals the decision of the reviewing court, asserting: (1) the trial court improperly substituted its own finding of fact for that of the ALJ regarding the alleged extra-statutory statement, and (2) assuming the officer improperly gave Rolfe an extra-statutory warning, Rolfe presented no evidence that she would have refused the breath test but for the coercive warning.[1]

## DISCUSSION

Section 724.015 of the Transportation Code mandates that before an officer may request a breath specimen from a person arrested for driving while intoxicated, the officer must inform the person of two consequences of refusing to submit a specimen: (1) the refusal may be admissible in a subsequent prosecution, and (2) the person's driver's license will be automatically suspended. *See* Transp. Code § 724.015(1)–(2). Implicit in requiring these warnings is the importance of ensuring that the suspect's decision to submit is "made freely and with a correct understanding of the actual statutory consequences of refusal." *Erdman v. State,* 861 S.W.2d 890, 893 (Tex.Crim.App.1993) (discussing former article 6701*l*–5, section 2 of Texas Revised Civil Statutes, since repealed and re-codified as section 724.015 of Transportation Code). A decision to submit to a breath test is voluntary only if it is not the result of physical or psychological pressures. *See id.*

At the heart of the instant appeal is how the voluntariness of consent to give a speci-

men is affected by an officer's giving *additional* warnings beyond those statutorily required. This issue was confronted by the court of criminal appeals in its pivotal *Erdman* decision. *See Erdman,* 861 S.W.2d at 892–894. There, the defendant was given the proper statutory warnings before giving a breath specimen, but was also given two additional warnings: that failure to provide the specimen would result in DWI charges being filed against him, and that he would be placed in jail that night. It was not until the suspect received these additional warnings that he consented to the breath test. The court expressed its concern that giving extra-statutory warnings could coerce a suspect into giving a specimen and thus undermine the statute's purpose of ensuring that the decision is made freely without the influence of psychological pressure. *See id.* at 893. Applying this concern to the specific facts before it, the court concluded that the trial court abused its discretion by refusing to suppress the breath-test results. *See id.* at 894. The court's basis for its holding was twofold: (1) the non-statutory warnings given were of a type that would "normally result in considerable psychological pressure" to agree to give a breath sample, and (2) the record was devoid of evidence that the extra information had no bearing on the suspect's decision to consent. *Id.*

### Did Rolfe Receive Extra–Statutory Warnings?

Rolfe argues that her consent to the breath test was involuntary because she was given extra-statutory warnings in violation of the principles set forth in *Erdman.* She contends Officer Herring admitted he gave her a warning not directed by section 724.015. Rolfe directs this Court to the following exchange between Officer Herring and Rolfe's counsel on cross-examination during the suspension hearing before the ALJ:

Q. If my client had asked questions to get some further explanation about what was happening to her if they

---

1. The Department also urges this Court to hold that Rolfe waived any complaint that her consent was coerced by failing to object to the introduction of the intoxilyzer results on that ground and by failing to present direct evidence of coercion

at the hearing before the ALJ. Because we conclude that the reviewing court's judgment must be reversed based on the merits, we assume without deciding that Rolfe properly preserved her complaint.

took the Intoxilyzer or if they didn't take the Intoxilyzer, you certainly would have—

A. Yes, sir.

Q. —aided them—

A. Yes, sir.

Q. —give information, wouldn't you? And when my client asked what would happen if I refused, because it was the truth of the proposition explained to her that she would be booked into jail.

A. Yes, sir.

In closing argument at the suspension hearing, Rolfe's counsel urged the ALJ not to consider the breath-test results, stating, "your Honor, this is a classic *Erdman* case." The ALJ indicated he thought the testimony on which Rolfe relied was in response to a hypothetical question rather than being an admission by Herring that he had actually given Rolfe an improper warning. Nonetheless, the ALJ committed to listening to the tape-recorded testimony before making a final ruling. The ALJ later made a finding of fact that Rolfe was "properly asked to submit a specimen of breath or blood as demonstrated by the Department's statutory warning form." We can infer from this finding that the ALJ confirmed his initial reaction that the exchange was hypothetical and that Rolfe's breath-test results should therefore be considered.

■ The findings of an ALJ are reviewed by the county court at law under the substantial-evidence standard. *See* Tex. Gov't Code Ann. § 2001.174 (West 1999). In conducting a substantial-evidence review, the reviewing court may not substitute its judgment for that of the ALJ. *Railroad Comm'n v. Torch Operating Co.,* 912 S.W.2d 790, 792–93 (Tex.1995); *Texas State Bd. of Dental Examiners v. Sizemore,* 759 S.W.2d 114, 116 (Tex.1988). The reviewing court may consider only the record on which the ALJ's decision is based. *Sizemore,* 759 S.W.2d at 116. The question for review is whether the evidence as a whole is such that reasonable minds could have reached the conclusion the ALJ must have reached in order to take the disputed action. *Id.* If there is evidence to support either a negative or affirmative find-

ing on a specific matter, the decision of the ALJ must be upheld. *Texas Health Facilities Comm'n v. Charter Medical–Dallas, Inc.,* 665 S.W.2d 446, 453 (Tex.1984); *see also Torch Operating,* 912 S.W.2d at 792–93. Thus, in the instant case the county court at law, in the posture of a reviewing court, was limited to reviewing the administrative record to determine if there was substantial evidence to support the ALJ's finding.

■ Rolfe argues that Officer Herring's testimony quoted above is subject to only one interpretation—that he improperly gave her coercive, extra-statutory warnings. We disagree. Herring interrupted throughout the exchange, making it difficult to discern what question he was answering. Indeed, a simple reading of the transcript reveals several possible interpretations, including that Herring was answering a hypothetical question. Because the testimony—as it appears in the appellate record—is ambiguous and susceptible to different interpretations, determining its meaning fell within the exclusive province of the ALJ as fact finder. *See Buchanan v. Davis,* 15 S.W.2d 562 (Tex. Comm'n App. 1929, judgm't adopted) (opinion on reh'g); *Texas Prudential Ins. Co. v. Padgett,* 120 S.W.2d 927, 929 (Tex.Civ.App.—Waco 1938, no writ). The ALJ, as the only neutral party to actually hear the exchange, was in a position to observe Herring's demeanor, manner of speech, and voice inflection. The reviewing court was not. We believe it was reasonable for the ALJ to find that the complained-of exchange involved a hypothetical question, and the reviewing court was in no position to substitute its own finding to the contrary. Because the ALJ's finding that Rolfe was properly asked to submit to a breath specimen is supported by substantial evidence in the record, we hold that the reviewing court erred in overturning the administrative decision.

### If Given, Was the Extra Warning Actually Coercive?

■ Even if we assume that the only reasonable construction of the exchange in question is that Officer Herring improperly gave Rolfe extra-statutory information, we think that fact, standing alone, does not automati-

cally invalidate Rolfe's consent to the breath test. Rather, Rolfe's consent was invalid only if the additional warning actually coerced her into submitting to the test. The record contains no evidence, however, that Rolfe was in any way affected by the alleged coercive statement. Accordingly, we conclude that the reviewing court erred in overturning the administrative decision.

In *Erdman,* the court expressed concern that giving extra-statutory warnings "could easily" coerce a suspect into submission, but stopped short of saying all statements that normally result in psychological pressure *automatically* render consent involuntary. *See Erdman,* 861 S.W.2d at 893. Instead, the *Erdman* court found the State had failed to carry its burden of presenting evidence that the non-statutory information had no bearing on the accused's decision to consent to the breath test. *See id.*[2]

Requiring a causal connection between an improper warning and the decision to submit to a breath test is consistent with this Court's opinion in *State v. Sells,* 798 S.W.2d 865 (Tex.App.—Austin 1990, no writ), where we stated: "If a driver's consent is *induced* by an officer's misstatement of the consequences flowing from a refusal to take the test, the consent is not voluntary." *Sells,* 798 S.W.2d at 867 (emphasis added). The *Erdman* opinion quotes this language with approval, *see Erdman,* 861 S.W.2d at 894 n. 3 and Judge Clinton, concurring in the result, expressed his agreement with "the theory of inducement advanced in *State v. Sells." Id.* at 894 (Clinton, J., concurring).

Other decisions also support the necessity of establishing a causal link between the improper warning and the accused's agreement to submit to a breath test. *See Lane v. State,* 951 S.W.2d 242, 243 (Tex.App.—Austin 1997, no pet.) (accused received only oral warnings and failed to present any evidence that lack of written warnings influenced decision to take breath test); *Jessup v. State,* 935 S.W.2d 508, 511 (Tex.App.—Houston [14th Dist.] 1996, pet. ref'd) (accused received oral warnings prior to refusal to take breath test, but did not receive written warnings until later; nonetheless, refusal held admissible in subsequent trial for driving while intoxicated because no evidence of causal connection between refusal and failure to give warnings in written form). *Cf. State v. Serrano,* 894 S.W.2d 74, 75 (Tex.App.—Houston [14th Dist.] 1995, no pet.) (consent considered involuntary where evidence showed accused agreed to take breath test only *after* being improperly told refusal would result in immediate placement in jail); *Ewerokeh v. State,* 835 S.W.2d 796, 797 (Tex.App.—Austin 1992, pet. ref'd) (consent voluntary where officer gave incorrect extra-statutory warning *prior* to accused's giving consent to a breath test; no evidence of reliance on incorrect statement in giving consent).

In the present case, the Department presented evidence that Rolfe affirmatively agreed to submit to the intoxilyzer *before* receiving any warnings—either proper or improper—and never withdrew her consent. This evidence at least creates an inference that Rolfe never intended to refuse to take the test and that her agreement was not affected by any improper warnings she may have later received. Thus, unlike *Erdman,* the record in the instant case does contain evidence showing that the extra warnings had no bearing on the accused's decision to submit. *See Erdman,* 861 S.W.2d at 893.

Significantly, Rolfe did not testify at the suspension hearing and presented no evidence whatsoever before the ALJ that she was coerced into giving a breath specimen by Officer Herring's alleged extra-statutory warning. Based on our review of the evidence contained in the record, we hold that the reviewing court improperly reversed the administrative decision authorizing the suspension of Rolfe's driver's license.

## CONCLUSION

Because the record contains substantial evidence to support the ALJ's findings, the

---

**2.** Because the parties in *Erdman* agreed that the State had the burden of showing voluntary consent to a breath test, the court assumed, without deciding, that this was the correct burden allocation. *See Erdman,* 861 S.W.2d at 893 n. 2. The court did not determine the applicable standard of proof. *Id.* In a concurring opinion, Judge Baird stated his belief that the proper standard is "clear and convincing evidence." *See id.* at 895 (Baird, J., concurring).

reviewing court erred when it reversed the administrative decision authorizing the suspension of Rolfe's driver's license. Accordingly, we reverse the reviewing court's order and render judgment affirming the administrative decision.