TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-01-00544-CR






The State of Texas, Appellant


v.


Jeremy Jones, Appellee







FROM THE COUNTY COURT AT LAW NO. 2 OF HAYS COUNTY

NO. 60,991, HONORABLE LINDA A. RODRIGUEZ, JUDGE PRESIDING






 The State appeals an order granting appellee's motion to suppress evidence. Tex.
Code Crim. P. Ann. art. 44.01 (a)(5) (West 2002). In a prosecution for driving while intoxicated,
the trial court suppressed evidence of appellee's breath test and the audio portion of the DWI
video. We will reverse the order and remand the cause for further proceedings.


FACTS


 On December 10, 2000, appellee was stopped by an officer of the San Marcos Police
Department for an alleged traffic violation. At the conclusion of the traffic stop, appellee was
arrested for driving while intoxicated (DWI). Appellee was taken to the Hays County Jail where he
was videotaped and asked to submit a specimen of his breath for analysis. The arresting officer read
appellee his Miranda rights and asked appellee if he would give up his right to remain silent and
answer questions. Appellee declined to answer any questions until he could "make a phone call." 
Therefore, the officer did not ask any of the DWI interview questions. The officer also read appellee
the statutory warning contained in the DIC-24 form and requested a specimen of appellee's breath. 
Appellee agreed to provide a breath specimen. The officer then requested that appellee perform field
sobriety tests on video, which appellee agreed to perform. The videotaped interview concluded and
appellee provided a breath sample.

 Appellee testified in a pretrial hearing regarding the suppression of the results from
the breath test and suppression of the audio portion of the videotaped DWI interview. According
to appellee, he was illegally coerced into providing a breath sample. Appellee testified regarding a
conversation he had with the officer on the way to the jail. Appellee testified that he told the officer,
"This is really embarrassing." Appellee said that in response, the officer went over an agenda
regarding the procedures at the jail and also stated, "As long as you go along with the program
everything will work itself out." Appellee testified that he took this to mean that appellee should be
cooperative and that the officer would "help me [appellee] out as much as he could . . . [m]aybe
lessen the blow . . . . I don't know." After this time, no other conversation took place between the
officer and appellee until they arrived at the jail.

 Appellee testified that but for the arresting officer's statement in the car, he would
not have taken the breath test. The officer, who also testified, could not recall whether he made the
statement to appellee.

 The trial court found that the officer had offered verbal inducements which were
understood by appellee to be to his advantage if appellee cooperated and took the breath test. The
court also found that these verbal inducements were "in addition to, and outside of, the statutorily
permissible language outlined in Erdman v. State, 861 S.W.2d 890 (Tex. Crim. App. 1993)." Based
on the finding that appellee's consent to the test had not been voluntary, the court granted appellee's
motion to suppress the results of the appellee's breath test as well as the audio portion of the DWI
video. The State now appeals.

 By two points of error, the State challenges the suppression of the breath test and the
audio portion of the videotaped interview. In its first point of error, the State asserts that the trial
court erred in suppressing the results of the breath test because the statement attributed to the
arresting officer was not specifically directed at the consequences of taking or refusing a breath test. 
In its second point of error, the State argues that the trial court erred in suppressing the entire audio
portion of the videotaped interview because appellee's performance of sobriety tests were non-testimonial in nature and therefore are not subject to the state and federal protections against
compelled self-incrimination.


STANDARD OF REVIEW


 As a general rule, appellate courts should afford almost total deference to a trial
court's determination of the historical facts that the record supports, especially when the trial court's
fact findings are based on an evaluation of credibility and demeanor. Combest v. State, 981 S.W.2d
958, 959 (Tex. App.--Austin 1998, pet. ref'd); see also Guzman v. State, 955 S.W.2d 85, 89 (Tex.
Crim. App. 1997). The appellate courts should afford the same amount of deference to trial courts'
rulings on "application of law to fact questions," also known as "mixed questions of law and fact,"
if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. 
Combest, 981 S.W.2d at 959. The appellate courts may review de novo "mixed questions of law and
fact" not falling within this category. Id. at 960; see Villarreal v. State, 935 S.W.2d 134, 139 (Tex.
Crim. App. 1996) (McCormick, P.J., concurring) (if the trial court "is not in an appreciably better
position" than the appellate court to decide the issue, the appellate court may independently
determine the issue while affording deference to the trial court's findings on subsidiary factual
questions). Since the trial court was in no better a position than we are to judge the coercive nature
of the arresting officer's statement and since resolution of the issues does not turn on an evaluation
of credibility and demeanor, we review the trial court's decision de novo.


DISCUSSION


 Section 724.015 of the transportation code mandates that before an officer may
request a breath specimen from a person arrested for driving while intoxicated, the officer must
inform the person of two consequences of refusing to submit a specimen: (1) the refusal may be
admissible in a subsequent prosecution, and (2) the person's driver's license will be automatically
suspended. See Tex. Transp. Code Ann. § 724.015(1)-(2) (West 1999). Implicit in the requirement
of these warnings is the importance of ensuring that the suspect's decision to submit is "made freely
and with a correct understanding of the actual statutory consequences of refusal." Texas Dept. of
Pub. Safety v. Rolfe, 986 S.W.2d 823, 825 (Tex. App.-Austin 1999, no pet.) (quoting Erdman, 861
S.W.2d at 893). A decision to submit to a breath test is voluntary only if it is not the result of
physical or psychological pressures. See id.

 The State argues in its first point of error that the statement made by the arresting
officer does not amount to a verbal inducement that falls outside the permissible language outlined
in Erdman because the statement was not specifically directed at the consequences of taking or
refusing a breath test. In Erdman, the defendant was given the proper statutory warnings before
giving a breath specimen, but was also given two additional warnings: that failure to provide the
specimen would result in DWI charges being filed against him, and that he would be placed in jail
that night. Erdman, 861 S.W.2d at 892-94. It was not until the suspect received these additional
warnings that he consented to the breath test. Id. at 893-94. The court expressed its concern that
giving extra-statutory warnings could coerce a suspect into giving a specimen and thus undermine
the statute's purpose of ensuring that the decision is made freely without the influence of
psychological pressure. Id. at 893. Applying this concern to the specific facts before it, the court
concluded that the trial court abused its discretion by refusing to suppress the breath-test results. Id.
at 894. The court's basis for its holding was twofold: (1) the non-statutory warnings given were of
a type that would "normally result in considerable psychological pressure" to agree to give a breath
sample, and (2) the record was devoid of evidence that the extra information had no bearing on the
suspect's decision to consent. Id.


Did Appellee Receive Non-Statutory Warnings?

 Appellee argues that his consent to the breath test was involuntary because he was
verbally induced by the arresting officer to take the breath test. Appellee complains that these
inducements went beyond the permissible statutory language set forth in Erdman. Appellee claims
that the arresting officer made two statements to appellee during the arrest which coerced the
appellee into taking a breath test.

 First, appellee claims that at the time he was arrested, he did not intend to take the
breath test. (1) It was only after the arresting officer's alleged statement in the car that "as long as you
go along with the program everything will work itself out" that appellee decided he would submit
to a breath test. In his brief, appellee claims the above statement meant that appellee was expected
to submit to a breath test and therefore, his consent was involuntary. However, there is nothing in
the record to support that that was appellee's understanding of the statement. In fact, according to
appellee's own testimony, he interpreted the officer's statement only to mean that appellee should
be cooperative and give the officer any information appellee could and that the officer would help
appellee out as much as the officer could.

 In Sandoval v. State, this Court emphasized that when extra-statutory warnings of
consequences of a refusal to submit to the breath test are given, consent may be considered to have
been involuntary. Sandoval v. State, 17 S.W.3d 792, 795 (Tex. App.--Austin 2000, pet. ref'd)
(citing Rolfe, 986 S.W.2d at 827). In fact, case law generally focuses only on extra-statutory
warnings of consequences of refusing a breath test. See, e.g., Erdman, 861 S.W.2d at 893-94; Rolfe,
986 S.W.2d at 826; see also Ewerokeh v. State, 835 S.W.2d 796, 796 (Tex. App.--Austin 1992, pet.
ref'd); State v. Sells, 798 S.W.2d 865, 866 (Tex. App.-- Austin 1990, no pet.) (pre-Erdman cases
also considering extra-statutory warnings of refusal to take test). In Erdman, the court of criminal
appeals focused its analysis exclusively on the extra-statutory warnings concerning the consequences
of refusing the test. See Erdman, 861 S.W.2d at893-94. The Erdman court indicated that a warning
of additional, non-statutory consequences of refusal was inherently coercive and would give rise to
the inference that the consent was coerced, shifting the burden to the State to present evidence that
the consent was in fact voluntary. See id. However, in Sandoval and Rolfe, this Court said it is not
enough simply to show extra-statutory warnings of any kind were given; in the absence of an extra-statutory warning that is inherently and necessarily coercive, the defendant must also show a "causal
connection between [the] improper warning and the decision to submit to a breath test." Sandoval,
17 S.W.3d at 796; Rolfe, 986 S.W.2d at 827. If the extra-statutory warning is not related to the
consequences of refusing a breath test, the burden remains on the appellant to show the extra-statutory warnings actually coerced his consent.

 At the time the arresting officer made the statement "as long as you go along with the
program everything will work itself out," it was not made in the context of taking a breath test. The
statement was made in the officer's car on the way to the jail. It was a response to appellee's
comment that "[t]his is really embarrassing." The officer had not asked appellee if he wished at that
time to submit to a breath test. Furthermore, the officer was not informing appellee of the two
statutory consequences that may result when a person refuses to submit a breath specimen (i.e., the
refusal may be admissible in a subsequent prosecution and the person's driver's license will be
automatically suspended). Appellee's own testimony indicated that the entire conversation during
the drive back to the jail consisted of his statement that this was embarrassing and Officer Palermo's
response that "as long as you go along with the program everything will work itself out." 
Additionally, when asked what he took that to mean, appellee stated that "I would be as cooperative
and I would give him any information he can-or that I can and he would help me out as much as he
could." The officer's first statement was not an extra-statutory warning concerning the consequences
of refusing a breath test, as indicated by appellee's own testimony. 


If given, was the non-statutory warning actually coercive?

 Even if we assume that the only reasonable construction of the exchange between the
officer and appellee in the car is that the officer improperly gave appellee an extra-statutory warning,
that fact, standing alone, does not automatically invalidate appellee's consent to the breath test. 
Since the warning was not in relation to the refusal to take a breath test, appellee's consent was
invalid only if the additional warning actually coerced him into submitting to the test. Appellee has
the burden to show a causal connection between an extra-statutory warning and the decision to
submit to a breath test. See Sells, 798 S.W.2d at 867; see also Rolfe, 986 S.W.2d at 827. The record
contains no evidence that appellee was in any way affected by the alleged coercive statement. The
statement was not made in the context of preparing to take a breath test nor was it made in the
context of giving appellee statutory warnings. We find no causal connection between the extra-statutory warning and the decision to submit to a breath test. Therefore, we hold that the trial court
erred in suppressing the results of the breath test.

 Appellee states in the fact section of his brief that the arresting officer made a second
statement which coerced appellee into submitting to the breath test. Appellee claims that the officer
indicated that if he would take the test the officer would help him out as much as he could and would
note in his report that appellee was polite and cooperative. Although appellee refers to this
statement, he does not provide an argument with respect to the statement. Tex. R. App. P. 38.1(h). 
Thus, this argument is inadequately briefed and the complaint is therefore waived. However,
assuming appellee had provided an argument in his brief, there is nothing in the record to support
appellee's assertion. (2) Appellee failed to clarify who made the statement, when it was made, and
what "test" appellee was referring to. The "test" that appellee was referring to could have been a
field sobriety test or a breath test. As a result of appellee's lack of clarification with respect to the
statement, at most we have the statement occurring at some point in the evening, requiring an
unreasonable inference that the statement was made in the context of giving a breath test or in the
context of informing appellee of proper statutory warnings.

 Additionally, after a review of the record, it appears appellee negates and undermines
the effect of the second statement on his consent to take a breath test. When questioned at the
suppression hearing by his attorney about what influenced his decision to take the breath test,
appellee responded that it was the first statement, "as long as you go along with the program
everything will work itself out" that made him change his mind. Therefore, we hold the second
statement was not an extra-statutory warning concerning the consequences of refusing a breath test. 
Even assuming it to be a warning of some kind, appellee did not carry his burden of showing a causal
connection between the improper warning and the decision to submit to a breath test. 


Did the trial court err in suppressing the entire audio portion of the videotape?

 In its second point of error, the State argues that the trial court erred in suppressing
the entire audio portion of the videotaped interview because the appellee's performance of sobriety
tests is non-testimonial in nature and therefore not subject to the state and federal protections against
compelled self-incrimination. The State does not take issue with the court's suppression of the audio
portion of the video that relates to appellee's invocation of the right to counsel or any questions that
would constitute custodial interrogation. To the extent the trial court suppressed the entire video,
appellee stipulates that the State may introduce into evidence the audio portion of the video for all
but appellee's invocations of counsel and any interrogation that occurred thereafter.

 The trial court's suppression of the entire audio conflicts with decisions by the court
of criminal appeals. See Gassaway v. State, 957 S.W.2d 48 (Tex. Crim. App. 1997); Jones v. State,
795 S.W.2d 171 (Tex. Crim. App. 1990). In both Gassaway and Jones, the court of criminal appeals
held that audio tracks from DWI videotapes should not be suppressed unless the police conduct calls
for a testimonial response not normally incident to arrest and custody. The court went on to say that
police requests that a suspect perform sobriety tests and directions on how to perform the tests do
not constitute "interrogation." Gassaway, 957 S.W.2d at 50; Jones, 795 S.W.2d at 176. 
Additionally, the court concluded that recitation of the alphabet and counting backwards are not
testimonial. They are physical evidence of the functioning of the defendant's mental and physical
faculties, providing a physical exemplar of the suspect's manner of speech at the time of arrest. 
Gassaway, 957 S.W.2d at 50; Jones, 795 S.W.2d at 175. We hold that it was error for the trial court
to suppress the entire audio portion of the videotape; the only portions of the audio that should have
been suppressed are appellee's invocation of the right to counsel and any interrogation that occurred
thereafter.


CONCLUSION


 Having concluded that the trial court erred in suppressing the results of the breath test
and suppressing the entire audio portion of the videotape, we reverse the order and remand the cause
for further proceedings consistent with this opinion.



 

 David Puryear, Justice 

Before Justices Kidd, Patterson and Puryear

Reversed and Remanded

Filed: September 26, 2002

Do Not Publish 
1. During his testimony at the suppression hearing, the following exchange took place
between appellee and his attorney:

Attorney: Were you going to take a breath test?


Appellee: I did not plan on it, no, sir.


Attorney: Did you have any desire to take a breath test at that point in time?


Appellee: No, sir.


Attorney: All right. What was said by Officer Palermo to persuade you or cause
you to change your mind?


Appellee: Well, after I made the comment of this is embarrassing he kind of -
said - he kind of just went over the little agenda, first we'll do this
and then we'll do this, and I go okay. And then he goes, "As long as
you go along with the program everything will work itself out."


Attorney: What did you take that to mean?


Appellee: Basically I - I would be as cooperative and I would give him any 
information he can - or that I can and he would help me out as much
as he could. 
2. On redirect examination, the defense attorney asked the following, "It's my understanding
also that prior to the breath test being given there was some type of discussion between you and
Officer Palermo about, 'If you do the test I'll make sure that I include some words . . . to your
advantage,' or something like that. Do you know what I'm talking about?" In response, appellee
answered, "If you do this test I'll make sure I put in my report that you were polite and cooperative."