# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00544-CR

**The State of Texas, Appellant**

**v.**

**Jeremy Jones, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 2 OF HAYS COUNTY
### NO. 60,991, HONORABLE LINDA A. RODRIGUEZ, JUDGE PRESIDING

The State appeals an order granting appellee=s motion to suppress evidence.  Tex. Code Crim. P. Ann. art. 44.01 (a)(5) (West 2002).  In a prosecution for driving while intoxicated, the trial court suppressed evidence of appellee=s breath test and the audio portion of the DWI video.  We will reverse the order and remand the cause for further proceedings.

## FACTS

On December 10, 2000, appellee was stopped by an officer of the San Marcos Police Department for an alleged traffic violation.  At the conclusion of the traffic stop, appellee was arrested for driving while intoxicated (DWI).  Appellee was taken to the Hays County Jail where he was videotaped and asked to submit a specimen of his breath for analysis.  The arresting officer read appellee his Miranda rights and asked appellee if he would give up his right to remain silent and answer questions.  Appellee declined to

answer any questions until he could Amake a phone call.@ Therefore, the officer did not ask any of the DWI interview questions. The officer also read appellee the statutory warning contained in the DIC-24 form and requested a specimen of appellee=s breath. Appellee agreed to provide a breath specimen. The officer then requested that appellee perform field sobriety tests on video, which appellee agreed to perform. The videotaped interview concluded and appellee provided a breath sample.

Appellee testified in a pretrial hearing regarding the suppression of the results from the breath test and suppression of the audio portion of the videotaped DWI interview. According to appellee, he was illegally coerced into providing a breath sample. Appellee testified regarding a conversation he had with the officer on the way to the jail. Appellee testified that he told the officer, AThis is really embarrassing.@ Appellee said that in response, the officer went over an agenda regarding the procedures at the jail and also stated, AAs long as you go along with the program everything will work itself out.@ Appellee testified that he took this to mean that appellee should be cooperative and that the officer would Ahelp me [appellee] out as much as he could . . . [m]aybe lessen the blow . . . . I don=t know.@ After this time, no other conversation took place between the officer and appellee until they arrived at the jail.

Appellee testified that but for the arresting officer=s statement in the car, he would not have taken the breath test. The officer, who also testified, could not recall whether he made the statement to appellee.

The trial court found that the officer had offered verbal inducements which were understood by appellee to be to his advantage if appellee cooperated and took the breath test. The court also found that these verbal inducements were Ain addition to, and outside of, the statutorily permissible language

**2**

outlined in *Erdman v. State*, 861 S.W.2d 890 (Tex. Crim. App. 1993).@ Based on the finding that appellee=s consent to the test had not been voluntary, the court granted appellee=s motion to suppress the results of the appellee=s breath test as well as the audio portion of the DWI video. The State now appeals.

By two points of error, the State challenges the suppression of the breath test and the audio portion of the videotaped interview. In its first point of error, the State asserts that the trial court erred in suppressing the results of the breath test because the statement attributed to the arresting officer was not specifically directed at the consequences of taking or refusing a breath test. In its second point of error, the State argues that the trial court erred in suppressing the entire audio portion of the videotaped interview because appellee=s performance of sobriety tests were non-testimonial in nature and therefore are not subject to the state and federal protections against compelled self-incrimination.

### STANDARD OF REVIEW

As a general rule, appellate courts should afford almost total deference to a trial court=s determination of the historical facts that the record supports, especially when the trial court=s fact findings are based on an evaluation of credibility and demeanor. *Combest v. State*, 981 S.W.2d 958, 959 (Tex. App.CAustin 1998, pet. ref=d); *see also Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). The appellate courts should afford the same amount of deference to trial courts= rulings on Aapplication of law to fact questions,@ also known as Amixed questions of law and fact,@ if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Combest,* 981 S.W.2d at 959. The appellate courts may review *de novo* Amixed questions of law and fact@ not falling within this category. *Id*. at 960*; see Villarreal v. State*, 935 S.W.2d 134, 139 (Tex. Crim. App. 1996) (McCormick, P.J., concurring) (if

**3**

the trial court Ais not in an appreciably better position@ than the appellate court to decide the issue, the appellate court may independently determine the issue while affording deference to the trial court=s findings on subsidiary factual questions).  Since the trial court was in no better a position than we are to judge the coercive nature of the arresting officer=s statement and since resolution of the issues does not turn on an evaluation of credibility and demeanor, we review the trial court=s decision *de novo.*

## DISCUSSION

Section 724.015 of the transportation code mandates that before an officer may request a breath specimen from a person arrested for driving while intoxicated, the officer must inform the person of two consequences of refusing to submit a specimen: (1) the refusal may be admissible in a subsequent prosecution, and (2) the person=s driver=s license will be automatically suspended. *See* Tex. Transp. Code Ann. ' 724.015(1)-(2) (West 1999).  Implicit in the requirement of these warnings is the importance of ensuring that the suspect=s decision to submit is Amade freely and with a correct understanding of the actual statutory consequences of refusal.@ *Texas Dept. of Pub. Safety v. Rolfe*, 986 S.W.2d 823, 825 (Tex. App.BAustin 1999, no pet.) (quoting *Erdman*, 861 S.W.2d at 893).  A decision to submit to a breath test is voluntary only if it is not the result of physical or psychological pressures.  *See id.*

The State argues in its first point of error that the statement made by the arresting officer does not amount to a verbal inducement that falls outside the permissible language outlined in *Erdman* because the statement was not specifically directed at the consequences of taking or refusing a breath test. In *Erdman*, the defendant was given the proper statutory warnings before giving a breath specimen, but was also given two additional warnings: that failure to provide the specimen would result in DWI charges

4

being filed against him, and that he would be placed in jail that night. *Erdman*, 861 S.W.2d at 892-94. It was not until the suspect received these additional warnings that he consented to the breath test. *Id.* at 893-94. The court expressed its concern that giving extra-statutory warnings could coerce a suspect into giving a specimen and thus undermine the statute=s purpose of ensuring that the decision is made freely without the influence of psychological pressure. *Id.* at 893. Applying this concern to the specific facts before it, the court concluded that the trial court abused its discretion by refusing to suppress the breath-test results. *Id.* at 894. The court=s basis for its holding was twofold: (1) the non-statutory warnings given were of a type that would Anormally result in considerable psychological pressure@ to agree to give a breath sample, and (2) the record was devoid of evidence that the extra information had no bearing on the suspect=s decision to consent. *Id.*

### Did Appellee Receive Non-Statutory Warnings?

Appellee argues that his consent to the breath test was involuntary because he was verbally induced by the arresting officer to take the breath test. Appellee complains that these inducements went beyond the permissible statutory language set forth in *Erdman*. Appellee claims that the arresting officer made two statements to appellee during the arrest which coerced the appellee into taking a breath test.

First, appellee claims that at the time he was arrested, he did not intend to take the breath test.[1] It was only after the arresting officer=s alleged statement in the car that Aas long as you go along with

---

[1] During his testimony at the suppression hearing, the following exchange took place between appellee and his attorney:

the program everything will work itself out@ that appellee decided he would submit to a breath test. In his brief, appellee claims the above statement meant that appellee was expected to submit to a breath test and therefore, his consent was involuntary. However, there is nothing in the record to support that that was appellee=s understanding of the statement. In fact, according to appellee=s own testimony, he interpreted the officer=s statement only to mean that appellee should be cooperative and give the officer any information appellee could and that the officer would help appellee out as much as the officer could.

In *Sandoval v. State*, this Court emphasized that when extra-statutory warnings of consequences of a *refusal to submit* to the breath test are given, consent may be considered to have been involuntary. *Sandoval v. State,* 17 S.W.3d 792, 795 (Tex. App.CAustin 2000, pet. ref=d) (citing *Rolfe*,

---

Attorney: Were you going to take a breath test?

Appellee: I did not plan on it, no, sir.

Attorney: Did you have any desire to take a breath test at that point in time?

Appellee: No, sir.

Attorney: All right. What was said by Officer Palermo to persuade you or cause you to change your mind?

Appellee: Well, after I made the comment of this is embarrassing he kind of B said B he kind of just went over the little agenda, first we=ll do this and then we=ll do this, and I go okay. And then he goes, AAs long as you go along with the program everything will work itself out.@

Attorney: What did you take that to mean?

Appellee: Basically I B I would be as cooperative and I would give him any information he can B or that I can and he would help me out as much as he could.

**6**

986 S.W.2d at 827). In fact, case law generally focuses only on extra-statutory warnings of consequences of refusing a breath test. *See, e.g.*, *Erdman*, 861 S.W.2d at 893-94; *Rolfe*, 986 S.W.2d at 826; *see also Ewerokeh v. State*, 835 S.W.2d 796, 796 (Tex. App.CAustin 1992, pet. ref=d); *State v. Sells*, 798 S.W.2d 865, 866 (Tex. App.C Austin 1990, no pet.) (pre-*Erdman* cases also considering extra-statutory warnings of refusal to take test). In *Erdman,* the court of criminal appeals focused its analysis exclusively on the extra-statutory warnings concerning the consequences of *refusing* the test. *See Erdman*, 861 S.W.2d at893-94. The *Erdman* court indicated that a warning of additional, non-statutory consequences of refusal was inherently coercive and would give rise to the inference that the consent was coerced, shifting the burden to the State to present evidence that the consent was in fact voluntary. *See id.* However, in *Sandoval* and *Rolfe*, this Court said it is not enough simply to show extra-statutory warnings *of any kind* were given; in the absence of an extra-statutory warning that is inherently and necessarily coercive, the defendant must also show a Acausal connection between [the] improper warning and the decision to submit to a breath test.@ *Sandoval*, 17 S.W.3d at 796; *Rolfe*, 986 S.W.2d at 827. If the extra-statutory warning is not related to the consequences of refusing a breath test, the burden remains on the appellant to show the extra-statutory warnings actually coerced his consent.

At the time the arresting officer made the statement Aas long as you go along with the program everything will work itself out,@ it was not made in the context of taking a breath test. The statement was made in the officer=s car on the way to the jail. It was a response to appellee=s comment that A[t]his is really embarrassing.@ The officer had not asked appellee if he wished at that time to submit to a breath test. Furthermore, the officer was not informing appellee of the two statutory consequences that may result when a person refuses to submit a breath specimen (*i.e.*, the refusal may be admissible in a

**7**

subsequent prosecution and the person=s driver=s license will be automatically suspended).  Appellee=s own testimony indicated that the entire conversation during the drive back to the jail consisted of his statement that this was embarrassing and Officer Palermo=s response that Aas long as you go along with the program everything will work itself out.@ Additionally, when asked what he took that to mean, appellee stated that AI would be as cooperative and I would give him any information he canBor that I can and he would help me out as much as he could.@ The officer=s first statement was not an extra-statutory warning concerning the consequences of refusing a breath test, as indicated by appellee=s own testimony.

### *If given, was the non-statutory warning actually coercive?*

Even if we assume that the only reasonable construction of the exchange between the officer and appellee in the car is that the officer improperly gave appellee an extra-statutory warning, that fact, standing alone, does not automatically invalidate appellee=s consent to the breath test.  Since the warning was not in relation to the *refusal* to take a breath test, appellee=s consent was invalid only if the additional warning actually coerced him into submitting to the test.  Appellee has the burden to show a causal connection between an extra-statutory warning and the decision to submit to a breath test.  *See Sells,* 798 S.W.2d at 867; *see also Rolfe*, 986 S.W.2d at 827.  The record contains no evidence that appellee was in any way affected by the alleged coercive statement.  The statement was not made in the context of preparing to take a breath test nor was it made in the context of giving appellee statutory warnings.  We find no causal connection between the extra-statutory warning and the decision to submit to a breath test.  Therefore, we hold that the trial court erred in suppressing the results of the breath test.

Appellee states in the fact section of his brief that the arresting officer made a second statement which coerced appellee into submitting to the breath test. Appellee claims that the officer indicated that if he would take the test the officer would help him out as much as he could and would note in his report that appellee was polite and cooperative. Although appellee refers to this statement, he does not provide an argument with respect to the statement. Tex. R. App. P. 38.1(h). Thus, this argument is inadequately briefed and the complaint is therefore waived. However, assuming appellee had provided an argument in his brief, there is nothing in the record to support appellee=s assertion.[2] Appellee failed to clarify who made the statement, when it was made, and what Atest@ appellee was referring to. The Atest@ that appellee was referring to could have been a field sobriety test or a breath test. As a result of appellee=s lack of clarification with respect to the statement, at most we have the statement occurring at some point in the evening, requiring an unreasonable inference that the statement was made in the context of giving a breath test or in the context of informing appellee of proper statutory warnings.

Additionally, after a review of the record, it appears appellee negates and undermines the effect of the second statement on his consent to take a breath test. When questioned at the suppression hearing by his attorney about what influenced his decision to take the breath test, appellee responded that it

---

[2] On redirect examination, the defense attorney asked the following, AIt=s my understanding also that prior to the breath test being given there was some type of discussion between you and Officer Palermo about, >If you do the test I=ll make sure that I include some words . . . to your advantage,= or something like that. Do you know what I=m talking about?@ In response, appellee answered, AIf you do this test I=ll make sure I put in my report that you were polite and cooperative.@

was the first statement, "as long as you go along with the program everything will work itself out" that made him change his mind. Therefore, we hold the second statement was not an extra-statutory warning concerning the consequences of refusing a breath test. Even assuming it to be a warning of some kind, appellee did not carry his burden of showing a causal connection between the improper warning and the decision to submit to a breath test.

### *Did the trial court err in suppressing the entire audio portion of the videotape?*

In its second point of error, the State argues that the trial court erred in suppressing the entire audio portion of the videotaped interview because the appellee=s performance of sobriety tests is non-testimonial in nature and therefore not subject to the state and federal protections against compelled self-incrimination. The State does not take issue with the court=s suppression of the audio portion of the video that relates to appellee=s invocation of the right to counsel or any questions that would constitute custodial interrogation. To the extent the trial court suppressed the entire video, appellee stipulates that the State may introduce into evidence the audio portion of the video for all but appellee=s invocations of counsel and any interrogation that occurred thereafter.

The trial court=s suppression of the entire audio conflicts with decisions by the court of criminal appeals. *See Gassaway v. State*, 957 S.W.2d 48 (Tex. Crim. App. 1997); *Jones v. State*, 795 S.W.2d 171 (Tex. Crim. App. 1990). In both *Gassaway* and *Jones,* the court of criminal appeals held that audio tracks from DWI videotapes should not be suppressed unless the police conduct calls for a testimonial response not normally incident to arrest and custody. The court went on to say that police requests that a suspect perform sobriety tests and directions on how to perform the tests do not constitute

**10**

Ainterrogation.@ *Gassaway*, 957 S.W.2d at 50; *Jones*, 795 S.W.2d at 176. Additionally, the court concluded that recitation of the alphabet and counting backwards are not testimonial. They are physical evidence of the functioning of the defendant=s mental and physical faculties, providing a physical exemplar of the suspect=s manner of speech at the time of arrest. *Gassaway,* 957 S.W.2d at 50; *Jones*, 795 S.W.2d at 175. We hold that it was error for the trial court to suppress the entire audio portion of the videotape; the only portions of the audio that should have been suppressed are appellee=s invocation of the right to counsel and any interrogation that occurred thereafter.

## CONCLUSION

Having concluded that the trial court erred in suppressing the results of the breath test and suppressing the entire audio portion of the videotape, we reverse the order and remand the cause for further proceedings consistent with this opinion.

David Puryear, Justice

Before Justices Kidd, Patterson and Puryear

Reversed and Remanded

Filed: September 26, 2002

Do Not Publish