NUMBER 13-01-572-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG 

 



MELTON WAYNE HENNIGAN, Appellant,



v.




THE STATE OF TEXAS, Appellee.

 



On appeal from the 260th District Court of Orange County, Texas

 


O P I N I O N

Before Justices Valdez, Rodriguez, and Baird (1)

Opinion by Justice Baird


 Appellant was charged by indictment with the felony offense of driving while intoxicated. A jury convicted appellant of
the charged offense, and assessed punishment at ten years confinement in the Texas Department of Criminal
Justice--Institutional Division. We affirm.

I. Factual Summary.

 The sole point of error contends the trial judge erred in denying appellant's motion to exclude evidence, namely, the results
of an intoxilyzer test. Specifically, appellant argues he was coerced into providing the breath specimen. The trial judge
conducted a pre-trial hearing which included the testimony of three witnesses. That testimony may be summarized as
follows:

 On September 18, 2000, Officer Clinton Robinson of the Vidor Police Department arrested appellant for the offense of
driving while intoxicated (DWI). Robinson read appellant the DIC-24 form warnings and gave him the opportunity to take
the intoxilyzer test. Appellant refused. Appellant was transported to the Vidor Police Department. Whileen route,
appellant stated: "Well, I don't think I have anything to lose." Robinson responded: "You might pass. I mean, if you take
it, you might pass. That's your option. You refused; but like I said, you can still - - you can still provide us one." 
Subsequently, Robinson met with Sergeant Dave Shows and stated appellant's position on taking the intoxilyzer was
"maybe yes, maybe no." Appellant was then videotaped performing several field sobriety tests. At the conclusion of that
tape, appellant was again asked if he wished to take the intoxilyzer, and he refused. Appellant was then taken to the
intoxilyzer room and seated there while Shows prepared the intoxilyzer. (2) Then Shows told appellant he could remain
seated if he did not want to take the test, but if he chose he could get up and provide a breath specimen. Shows then asked
appellant to get up and, appellant complied, and gave a breath specimen. Robinson opined that appellant provided the
specimen voluntarily, and without coercion. 

 Sergeant Shows, a certified intoxilyzer operator, was informed by Robinson that appellant had refused in writing to submit
a breath sample, but had changed his mind. On the videotape, Shows gave appellant an opportunity to provide a breath
sample, but appellant again refused. Upon hearing this refusal, Shows left the video room and set up the intoxilyzer. When
asked why a defendant who had refused to provide a breath specimen would nevertheless be taken to the intoxilyzer room,
Shows explained: 

 I have run into a problem before where someone claimed that no one offered them the test . . . From that day forward,
whether they are going to take the test or not, I set the instrument up; I explain the procedure just like they were going to
take it; when it comes time for them to give their two required samples of breath, I tell them if they do not wish to give a
sample, when I ask them for it, remain in the chair and let the instrument void the test." (3) 23 



Shows stated this procedure was followed "to prove that the instrument was working and that there was a certified operator
available to administer the test." On the subject of whether a suspect takes or refuses to submit a breath specimen, Shows
testified he informs the suspect "that fact will be reported in a report to the District Attorney's Office." 

 Shows followed this routine with appellant. Shows testified that when he asked appellant for a breath sample, "to my
surprise, he got up and gave one." (4) When asked to provide a second sample, appellant again complied. Shows opined
that appellant freely and voluntarily provided the specimen, and that he was not coerced because Shows had "explained to
him very carefully that if he did not want to give a sample to just keep his seat." 

 Appellant testified that even though he refused to take the intoxilyzer test, he was taken to the intoxilyzer room. After
sitting there for a period of time, Robinson said to appellant: "Well, you know, it's been quite a while since you was [sic]
arrested. You'll probably pass it." Appellant testified that he "thought to myself, 'It's been a while.' So, I agreed with him to
myself [sic]; and I just got up and took the test." Appellant testified that Robinson's statement was the sole reason he
decided to submit a breath specimen. During his testimony, appellant contradicted the testimony of both Robinson and
Shows. Appellant testified that Robinson suggested that because of the passage of time, he (appellant) might pass the
intoxilyzer test; however, Robinson denied making any such comment. 

 The trial judge took the motion under advisement, and subsequently denied the same but did not enter written findings of
facts or conclusions of law. 

II. Authority.

 A person arrested for an offense alleged to have been committed while operating a motor vehicle in a public place while
intoxicated is deemed to have consented to submit specimens of his breath or blood for alcohol concentration analysis. 
Tex. Transp. Code Ann. § 724.011 (Vernon 1999). A person asked to submit a specimen must be given certain
admonishments. Id. § 724.015 (Vernon Supp. 2003). As it read in September 2000, section 724.015 required that
appellant be informed that if he refused to give a specimen (1) the refusal might be admissible in a subsequent prosecution,
and (2) his driver's license would be automatically suspended for not less than ninety days. Act of June 1, 1997, 75th Leg.,
R.S., ch. 1013, § 34, 1997 Tex. Gen. Laws 3686, 3698 (Tex. Trans. Code Ann. § 724.015(1), (2)(A) (since amended)). 
These warnings emphasize the importance of ensuring that the consent is given "freely and with a correct understanding of
the actual statutory consequences of refusal." Erdman v. State, 861 S.W.2d 890, 893 (Tex. Crim. App.1993) (discussing
former article 6701l-5, § 2 of Texas Revised Civil Statutes, since repealed and re-codified as § 724.015 of Texas
Transportation Code). A person's consent to a breath test is voluntary only if it is not the result of physical or psychological
pressures. Id. If the officer requesting a breath sample misstates the law and includes extra-statutory consequences of a
refusal to submit to the breath test, the consent may be considered to have been involuntarily given. Id. at 893-94; Tex.
Dep't of Pub. Safety v. Rolfe, 986 S.W.2d 823, 827 (Tex. App.-Austin 1999, no pet.); State v. Sells,798 S.W.2d 865, 867
(Tex. App.-Austin 1990, no pet.).

III. Analysis.

 In Pena v. State, 61 S.W.3d 745 (Tex. App.-Corpus Christi 2001, no pet.), we recognized three separate standards of
appellate review. Id. at 752. First, we afford almost total deference to the trial judge's determination of questions of
historical facts supported by the record, especially those facts based on an evaluation of credibility and demeanor. Id. 
Second, we apply the same standard when reviewing the trial judge's rulings on "application of law to fact questions," also
known as "mixed questions of law and fact," where the resolution of those ultimate questions turns on an evaluation of
credibility and demeanor. Id. Third, when considering with "mixed questions of law and fact" which do not turn on an
evaluation of credibility and demeanor, de novo review is appropriate because the trial judge is not in an appreciably better
position than the appellate court to decide the issue. Id. Most reviews of motion to suppress cases will be under a
bifurcated standard, in which the historical determination made by the trial court will be accorded total deference while the
application of the law to the facts will be analyzed under a de novostandard of review. State v. Ross, 32 S.W.3d 853, 856
(Tex. Crim. App.2000).

 We read this point of error as raising two separate arguments, each contending appellant was coerced into providing a
breath specimen. The first argument concerns Robinson and the allegation that he stated to appellant: "Well, you know, it's
been quite a while since you was [sic] arrested. You'll probably pass it." Appellant testified at the trial court, and now
argues on appeal, that this statement was the reason he decided to submit a breath specimen. However, as noted above,
Robinson, denied making any such comment. This argument invokes the first standard of review recognized by the
PenaCourt. Pena, 61 S.W.3d at 752. Because the question of whether Robinson made the statement is a question of
historical fact based upon an evaluation of credibility and demeanor, we must afford almost total deference to the trial
judge's resolution of the question. Id. Moreover, when the trial judge does not make express findings on underlying
historical facts, we will view them in a light most favorable to the trial court's decision. Loserth v. State, 963 S.W.2d 770,
774 (Tex. Crim. App.1998). In the instant case, because the trial judge did not enter express findings, we must afford
almost total deference to the resolution of this question in the light most favorable to his decision. In this light, we must
conclude the trial judge determined that Robinson was credible when he denied making the comment, and that appellant's
witnesses were not credible. Pena, 61 S.W.3d at 752. Consequently, we reject appellant's first argument.

 The second argument is that appellant's consent to submit a breath specimen was not voluntary because it was coerced by
Shows's statement that he would report to the District Attorney's Office the fact of whether appellant took or refused to take
the intoxilyzer test. Since Shows admitted making this statement, we are not dealing with a question which turns on an
evaluation of credibility and demeanor. Therefore, we will review this "mixed questions of law and fact" de novo. Id.

 As noted above, section 724.015 required that appellant be informed that if he refused to give a specimen (1) the refusal
might be admissible in a subsequent prosecution, and (2) his driver's license would be automatically suspended for not less
than ninety days. The Erdman Court made it clear that these and only these two warnings were permissible. Erdman, 861
S.W.2d at 893. According to Erdman:

 [A] person [arrested for DWI] must be warned that two specific consequences--only two--will definitely and directly result
from a refusal to submit to a breath test . . . . The Legislature has provided that only these two sanctions will directly result
from a refusal to submit to a breath test . . . . If law enforcement officials were permitted to 'warn' D.W.I. suspects--even
correctly--that a refusal to submit would result in consequences not contemplated by [the implied consent statute], then
suspects could easily be coerced into submission, and the protection afforded by this statutory section would be undermined.



 The issue, therefore, is whether Shows's statement that he would tell the district attorney's office whether appellant took or
refused to take the intoxilyzer constituted an extra-statutory consequence of appellant's refusal to submit a breath specimen. 
We believe Shows's statement does not constitute an additional consequence, but rather a logical result stemming from the
first required warning, namely that the refusal to submit a breath specimen might be admissible in a subsequent
prosecution. Obviously, for the refusal to be potentially admissible, the district attorney must be informed of the refusal.
Shows's statement simply conveyed that most basic fact. Therefore, we hold Shows's statement does not constitute an
extra-statutory consequence.

 Additionally, we note that the Erdman Court found significant the "complete absence of any record evidence showing that
this non-statutory information given to [Erdman] had no bearing on his decision to consent, no rational factfinder could
conclude that the State carried its burden of showing that [Erdman's] consent was voluntary." Id. at 893-94. As noted
above, both Robinson and Shows opined that appellant voluntarily consented to provide a breath sample. This testimony
provides an independent basis for holding Shows's statement did not render involuntary appellant's consent to take the
intoxilyzer.

 Having rejected both arguments raised by appellant, we overrule the sole point of error.

 The judgment of the trial court is affirmed.

 

CHARLES F. BAIRD,

Justice



Do not publish.

Tex. R. App. P. 47.2(b).



Opinion delivered and filed

this 12th day of June, 2003. 

1. Former Court of Criminal Appeals Judge Charles F. Baird assigned to this Court by the Chief Justice of the Supreme
Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1998).

2. Robinson testified that every person arrested for DWI is taken into the intoxilyzer room "to make sure the machine is
operating [and] to get a printout saying the subject refused." 

3. On cross-examination, Shows clarified that this procedure is employed only in felony DWI cases. 

4. Shows testified that immediately prior to giving the sample, appellant stated that he had nothing to lose.