**Gabriel SANDOVAL, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 03–99–00531–CR.

Court of Appeals of Texas, Austin.

May 18, 2000.

Rehearing Overruled June 15, 2000.

David K. Sergi, Law Offices of David K. Sergi, San Marcos, for appellant.

Michael S. Wenk, Dist. Atty., James F. Booher, Asst. Dist. Atty., San Marcos, for State.

Before Justices JONES, YEAKEL and PATTERSON.

J. WOODFIN JONES, Justice.

Appellant Gabriel Sandoval appeals the trial court's refusal to suppress the results of the breath test he took after he was arrested for driving while intoxicated (DWI). *See* Tex. Penal Code Ann. § 49.04(a) (West Supp.2000). We will affirm.

On July 26, 1998, Officer Randy Harkey of the Hays County Sheriff's Department was driving north on Interstate 35, checking drivers' speed with radar. Harkey estimated he was moving at sixty miles per hour, but admitted he may have been driving as slowly as fifty-seven miles per hour in the sixty-five mile per hour speed zone. A car came up behind Harkey's patrol car very rapidly. When Harkey hit his rear flashers to alert the other driver to his presence, the driver locked his brakes, forcing the front of the car down and squealing the tires. Harkey moved over to let the car pass and then pulled back behind the car and turned on his lights. Without signaling, the driver crossed three lanes of traffic to pull his car over on the shoulder.

Harkey asked the driver, appellant, to step out and walk to the back of the car. Harkey viewed appellant's driver's license and asked why appellant had been driving so fast. Appellant said he had not been paying attention. Harkey smelled a strong odor of alcohol as he spoke to appellant and saw an open, half-full beer container in the passenger compartment and three unopened cans of beer in the trunk. Harkey asked if appellant had been drinking, and appellant replied he had had a few beers. Appellant refused to take a field sobriety test, claiming he had a bad hip. Appellant also refused to recite the alphabet. Harkey performed a horizontal gaze nystagmus test, which appellant failed. Appellant's speech was slurred and his eyes were bloodshot.

Harkey asked appellant if he would take an intoxilyzer test, and appellant asked "what would happen if he passed the test." Harkey testified that he told appellant that if he failed the test he would be charged with DWI, but if he passed, Harkey would call one of appellant's family members to pick him up. Appellant then agreed to take the test. He was transported to the Hays County Jail, where he was videotaped being given another opportunity to take field sobriety tests and being read his rights. Appellant indicated he understood his rights and refused to take the field sobriety tests. Appellant was asked twenty-one questions, some of which he answered and some of which he refused to answer. Harkey remembered that appellant refused to say what he had been drinking, except to say "water." Harkey again asked appellant if he would take an intoxilyzer test, and appellant agreed. Appellant signed the consent form and took and failed the intoxilyzer test. Harkey testified he did not coerce or threaten appellant.

Appellant filed a motion to suppress the intoxilyzer results based on *Erdman v. State*, 861 S.W.2d 890 (Tex.Crim.App. 1993). Appellant argued that Harkey's statement that appellant could go home with a family member if he passed the test was a "great, great, great incentive, especially late at night, to coerce somebody into taking [an intoxilyzer] test." The State responded that Harkey had not coerced appellant into taking the test. The trial court denied appellant's motion to suppress, and appellant entered a plea of nolo contendere, reserving the right to appeal the denial of his motion to suppress. The trial court sentenced him to sixty days in jail with work release and a $500 fine and stayed the start of his jail time pending this appeal.

In one issue on appeal, appellant argues the trial court erred in refusing to suppress his intoxilyzer results because his consent was coerced by Harkey's statement that if appellant passed he would be released to the custody of his family. We disagree.

■ The admission or exclusion of evidence is within the trial court's discretion. *See Jackson v. State,* 575 S.W.2d 567, 570 (Tex.Crim.App.1979); *Ewerokeh v. State,* 835 S.W.2d 796, 798 (Tex.App.—Austin 1992, pet. ref'd). We will not reverse a trial court's ruling absent a clear showing of an abuse of discretion, defined as a decision "so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Cantu v. State,* 842 S.W.2d 667, 682 (Tex.Crim.App.1992).

■ The implied consent statute provides that a person arrested for an offense alleged to have arisen out of acts committed while operating a motor vehicle while intoxicated is deemed to have consented to the taking of samples for a breath or blood test. *See* Tex. Transp. Code Ann. § 724.011 (West.1999). Before an officer may request a breath specimen from a person arrested for DWI, the officer must inform the person of two consequences of refusing to submit a specimen: (1) the refusal may be admissible in a subsequent prosecution; and (2) the person's driver's license will be automatically suspended. *See id.* § 724.015(1)-(2) (West 1999). These warnings emphasize the importance of ensuring that the consent is given "freely and with a correct understanding of the actual statutory consequences of refusal." *Erdman,* 861 S.W.2d at 893 (discussing former article 6701*l*-5, § 2 of Texas Revised Civil Statutes, since repealed and recodified as § 724.015 of Transportation Code). A person's consent to a breath test is voluntary only if it is not the result of physical or psychological pressures. *See id.* If the officer requesting a breath sample misstates the law and includes extra-statutory consequences of a *refusal to submit* to the breath test, the consent may be considered to have been involuntarily given. *See id.* at 893–94; *Texas Dep't of Public Safety v. Rolfe,* 986 S.W.2d 823, 827 (Tex.App.—Austin 1999, no pet.); *State v. Sells,* 798 S.W.2d 865, 867 (Tex.App.—Austin 1990, no pet.).

Case law generally focuses only on extra-statutory warnings of consequences of refusing a breath test. *See, e.g., Erdman,* 861 S.W.2d at 893–94; *Rolfe,* 986 S.W.2d at 826; *see also Ewerokeh,* 835 S.W.2d at 796; *Sells,* 798 S.W.2d at 866 (pre-*Erdman* cases also considering extra-statutory warnings of refusal to take test). It is true, as appellant states, that Erdman was told of the consequences of passing and failing the intoxilyzer test. *See Erdman,* 861 S.W.2d at 891. He was also told, however, of the consequences of refusing the test. *See id.* The court of criminal appeals focused its analysis exclusively on the extra-statutory warnings concerning the consequences of refusing the test. *See id.* at 893–94. The court stated:

[A] person [arrested for DWI] must be warned that two specific consequences—only two—will definitely and directly result from a *refusal to submit to a breath test* . ... The Legislature has provided that only these two sanctions will directly result from a refusal to submit to a breath test.... If law enforcement officials were permitted to "warn" D.W.I. suspects—even correctly—that a *refusal to submit* would result in consequences not contemplated by [the implied consent statute], then suspects could easily be coerced into submission, and the protection afforded by this statutory section would be undermined.

*Id.* at 893 (emphasis added) (citations omitted).

The court did not hold Erdman's consent was coerced by the warnings about the consequences of taking and passing or failing the test. The court stated:

[Erdman] consented to the intoxilyzer test only after the trooper gave him warnings, both contemplated and not contemplated by [the implied consent statute], concerning the consequences of refusal. The non-statutory information conveyed to [Erdman] (that he would be jailed and charged with D.W.I.) was of the type that would normally result in considerable psychological pressure

upon a D.W.I. suspect to consent to the taking of a breath sample. Given the complete absence of any record evidence showing that this non-statutory information given to [Erdman] had *no* bearing on his decision to consent, no rational factfinder could conclude that the State carried its burden of showing that [Erdman's] consent was voluntary.

*Id.* at 893–94. The court was careful to say it held "only that law enforcement officials must take care to warn D.W.I. suspects correctly about the actual, direct, *statutory* consequences of refusal." *Id.* at 894.

■ The *Erdman* court indicated that the warning of additional, non-statutory consequences of refusal was inherently coercive and would give rise to the inference that the consent was coerced, requiring the State to present evidence that the consent was in fact voluntary. *See id.* at 894. In other words, because the warnings were conclusively coercive and the State presented no evidence showing the consent was voluntary, whether the defendant was actually coerced was not a fact question at the suppression hearing. *See id.* (no rational fact finder could conclude consent was voluntary). However, it is not enough simply to show extra-statutory warnings *of any kind* were given; in the absence of an extra-statutory warning that is inherently and necessarily coercive, the defendant must also show "a causal connection between [the] improper warning and the decision to submit to a breath test." *Rolfe*, 986 S.W.2d at 827.

■ We recognize an argument can be made that appellant *may* have been influ-

enced *to some degree* by learning he could go home if he passed the test, but we do not believe those warnings were as coercive as the statements on which *Erdman* was based. The statements in the present case do not lead to a conclusion of coercion that would require the State to present rebutting evidence. Instead, we believe the burden remained on appellant to show that the extra-statutory warnings actually coerced his consent. *See id.* (evidence indicated Rolfe consented before receiving alleged improper warnings; she did not testify at suppression hearing or present any other evidence that improper warnings coerced consent).

The only case we have found concerning this very specific issue—the validity of consent given after hearing consequences of passing and failing a breath test—is *State v. Serrano*, 894 S.W.2d 74 (Tex. App.—Houston [14th Dist.] 1995, no pet.). Serrano was stopped for erratic driving, arrested for DWI, and asked if he would consent to taking an intoxilyzer test. *See Serrano*, 894 S.W.2d at 75. He was told "if he passed the test he would be free to go but if he failed the test he [would] be put in jail for D.W.I.," and thereafter consented to the test. *Id.* at 75. Serrano argued that his consent was coerced and the trial court granted his motion for new trial. *See id.* The State appealed, arguing the trial court had abused its discretion in granting the new trial. *See·id.* The appellate court disagreed, holding that the trial court's decision to grant a new trial "was within the zone within which reasonable persons might disagree."[1] *Id.* at 76.

1. The *Serrano* court used language from *Erdman* but did not appear to consider the difference between telling a suspect the consequences of refusing to take a breath test as distinguished from the consequences of taking and passing or failing a test. *See Serrano*, 894 S.W.2d at 75. *Serrano* paraphrases *Erdman* and states that "[w]arning D.W.I. suspects— even factually correctly—of consequences not contemplated in [the implied consent statute] could easily coerce suspects into submission to take the intoxilyzer test, and the protection

afforded by the statute would be undermined." *Id.* However, the paraphrased statement in *Erdman* was directed at the danger of coercion arising out of refusal consequences, not pass/fail consequences. *See Erdman*, 861 S.W.2d at 893. To the extent *Serrano* actually stands for the proposition that merely telling a DWI suspect of the consequences of passing or failing a breath test is necessarily coercive, we disagree with that proposition and decline to follow *Serrano*.

■ In the present case, we believe the trial court's decision not to suppress appellant's test results was likewise within the zone of reasonable disagreement. The statements appellant heard about what would happen if he passed or failed the breath test were not of the same coercive nature as those in *Erdman,* and appellant did not present additional evidence to show a causal link between those statements and his consent to the test. Accordingly, the trial court did not abuse its discretion in refusing to suppress appellant's intoxilyzer results.

We affirm the trial court's judgment.