COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS




RUSSEL WAYNE URQUHART,


 Appellant,


v.



THE STATE OF TEXAS,


 Appellee.


§


 


§


 


§


 


§


 


§


 


 § 


No. 08-02-00168-CR



Appeal from the


County Court at Law No. 2


of Collin County, Texas 


(TC# 2-80346-01)





M E M O R A N D U M O P I N I O N


 Russell W. Urquhart appeals his jury conviction of driving while intoxicated, a Class
B misdemeanor. The court assessed punishment of 180 days' confinement and a fine of eight
hundred dollars. The confinement was suspended and Appellant was placed on community
supervision for two years. In three issues, Appellant challenges the denial of his motion to
suppress the breath-alcohol test, the trial court's finding that the extra-statutory warnings did
not have a coercive effect on Appellant, and the trial court's ruling allowing certain expert
retrograde extrapolation testimony. We affirm.



I

 Appellant was stopped for speeding in Plano on January 11, 2001. The investigating
officer, James Hoke, also observed Appellant weaving, albeit Appellant safely stopped his
vehicle. Appellant admitted drinking three glasses of wine, of unknown size, over an
unspecified time. After conducting roadside field sobriety tests, including a portable breath
test, the officer concluded Appellant was intoxicated. Appellant was taken to the city jail and
requested to provide a breath sample for analysis by the Intoxilyzer 5000. Appellant
expressed confusion regarding the language of the statutory warning. Officer Hoke
explained to Appellant that he was correct that a refusal to take the breath test could lead to
subsequent prosecution. Appellant asked what would happen if he agreed to the test and it
showed he was not within the range. Hoke responded that Appellant would be released if
he was under 0.08; he would stay in jail if he was over 0.08; and he would "remain here" if
Appellant refused the test. Hoke also testified he was not trying to persuade Appellant, but
was providing information. Appellant assented to the test. The test showed an alcohol
concentration of 0.133.

 Appellant filed a motion to suppress the results of the analysis because the arresting
officer told Appellant that if he passed, he would be allowed to go home. 

II

 In his first two issues, Appellant challenges the denial of his motion to suppress the
breath-alcohol test taken at the police station. Specifically, Appellant contends his consent
was involuntary due to extra-statutory warnings made by the investigating officer. He argues
these extra-statutory warnings arose from a series of proscribed warnings: (1) that Appellant
would be released if he passed; (2) he would remain in jail if he failed; or (3) that he would
remain in jail if he refused to take the test. Appellant also contends the trial court abused its
discretion in finding there was no coercive effect because of the extra-statutory warnings. 

 The State argues, and we agree, that only alleged error preserved was the extra-statutory statement by Hoke regarding Appellant's release. In Appellant's written motion,
Appellant only complained about the officer's statement that if Appellant took the test and
passed, he would be released from jail. No other statement is mentioned. At the suppression
hearing, Appellant specifically complained: "And then the decision breaker was the
nonstatutory information which was if you pass, you're going home." The State
appropriately argues that appellate rules require specificity. See Tex. R. App. P
33.1(a)(1)(A). And the specific complaint to the trial court, both in the written motion and
at the hearing, was essentially the same. That objection asserted that the "decision breaker"
was: if Appellant passed he could go home or get released.

 The trial court made several findings: (1) that the officer made extra-statutory
warnings; (2) Appellant participated knowingly and at a very high intellectual level; (3) the
extra-statutory statements made by the officer are factually true and contemplated by the
statutory procedure; and (4) Appellant was not coerced, because the extra-statutory
statements were true, logical, and natural consequences of the statutory scheme. Appellant
was given and signed off on the DIC-24 form, indicating consent, although admittedly he
expressed some confusion to the form. 

III

 Appellant argues, and we agree, that we review a motion to suppress evidence by both
an abuse of discretion and de novo standards. Guzman v. State, 955 S.W.2d 85, 87-91 (Tex.
Crim. App. 1997). Purely factual questions, based upon evaluation of credibility and
demeanor of witnesses, requires application of the abuse of discretion standard. Id. at 89.
Mixed questions of law and fact, not dependent on credibility or demeanor, are reviewed de
novo. Id. We examine the evidence in the light most favorable to the trial court's ruling.
State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). In a suppression hearing, the trial
court is the sole finder of fact. Pace v. State, 986 S.W.2d 740, 744 (Tex. App.--El Paso
1999, pet. ref'd). The trial judge may believe or disbelieve any of the evidence presented. 
Id. at 744. The totality of circumstances is considered in determining whether the trial court's
findings are supported by the record. In re D.A.R., 73 S.W.3d 505, 509 (Tex. App.--El Paso
2002) (citing Brewer v. State, 932 S.W.2d 161, 166 (Tex. App.--El Paso 1996, no pet.).

IV

 Appellant primarily relies upon Erdman v. State, 861 S.W.2d 890 (Tex. Crim. App.
1993). In Erdman the Appellant consented to the intoxilyzer test only after the trooper gave
him warnings, both contemplated and not contemplated by the statute, concerning the
consequences of refusal. Id. at 893-94. The non-statutory information given the Appellant,
that he would be jailed and charged with DWI, was of a type "that would normally result in
considerable psychological pressure upon a D.W.I. suspect to consent to the taking of a
breath sample." Id. at 894. Because there was a complete absence of any record showing
that this extra-statutory information given Appellant had no bearing on his decision to
consent, "no rational factfinder could conclude that the State carried its burden of showing
that Appellant's consent was voluntary." Id. The Erdman court found that the Appellant's
consent to the intoxilyzer test was obtained in violation of Article 6701 l-5, Section 2, (now
Tex. Transp. Code Ann. § 724.015 (Vernon 2003)) and therefore, inadmissable. Id. We
distinguish Erdman because there is considerable other evidence that this trial court was
afforded, including two video tapes (1) of Appellant's interaction with the officer, plus the
officer's testimony, including statements and admissions from Appellant, and a signed
consent form. If the Erdman court implicitly discussed the totality of the circumstances,
which we believe to be part of the appropriate standard, it was that no other proof existed -
i.e. the record was devoid of other evidence and circumstances showing the test to be
voluntary. See id. at 894. (2)

 The State counters Appellant's argument by citing Sandoval v. State, 17 S.W.3d 792
(Tex. App.--Austin 2000, pet. ref'd). Sandoval distinguished Erdman because the latter dealt
with the consequences of refusal. Id. at 795. In Erdman, because the State presented no
evidence showing consent was voluntary, whether the defendant was actually coerced, was
not a fact question at the suppression hearing. Id. at 796. Sandoval holds "[I]t is not enough
simply to show extra-statutory warnings of any kind were given; in the absence of an
extra-statutory warning that is inherently and necessarily coercive, the defendant must also
show 'a causal connection between [the] improper warning and the decision to submit to a
breath test.'" Id. The extra-statutory warning given in Sandoval is virtually identical to the
preserved error in this case. In Sandoval, the defendant was told he could go home if he
passed the test. Id. at 796. We believe much of the reasoning in Sandoval is persuasive.

 We agree that if law enforcement officials are permitted to "warn" DWI suspects by
extra-statutory means, some suspects could be coerced into submission, and the protection
afforded by this statutory scheme would be undermined. Erdman 861 S.W.2d at 894. 
However, we must recall that the implied consent statute provides that a person arrested for
an offense arising out of acts alleged to have been committed while operating a motor vehicle
in a public place, or a watercraft, while intoxicated, is deemed to have consented to the
taking of samples for a breath or blood test. Tex. Transp. Code Ann. § 724.011 (Vernon
2003); see also Beeman v. State, 86 S.W.3d 613 (Tex. Crim. App. 2002). Before an officer
may request a breath specimen from a person arrested for DWI, the officer must inform the
person of two consequences of refusing to submit a specimen: (1) the refusal may be
admissible in a subsequent prosecution; and (2) the person's driver's license will be
automatically suspended. Tex. Transp. Code Ann. § 724.015 (Vernon 2003). These
warnings emphasize the importance of ensuring that the consent is given "freely and with a
correct understanding of the actual statutory consequences of refusal." Erdman, 861 S.W.2d
at 893. The totality of the circumstances will also include testimony, if any, from the
defendant, other witnesses, video tapes, signed consents, and any other material matter before
the court. See In re D.A.R., 73 S.W.3d at 505. Here the trial court had wide-ranging
evidence, including virtual movies of the pertinent warnings and consent, the officer's
testimony, Appellant's signed consent form, and the statutory deemed consent. See Tex.
Transp. Code Ann. § 724.011 (Vernon 2003). Giving deference to the trial court's position
as sole factfinder, we cannot say, under the totality of the circumstances, the trial court
abused its discretion by finding the intoxilyzer test was voluntarily taken. Guzman, 955
S.W.2d. at 89; In re D.A.R., 73 S.W.3d at 509. Appellant's first two issues are overruled.

 In his final issue, Appellant attacks the trial court's ruling admitting the State's
expert's opinion on retrograde extrapolation. Alvin Finkley, a technical supervisor, told the
jury that by applying retrograde extrapolation, Appellant's blood-alcohol concentration was
above 0.08 at the time of the stop. Already in evidence, were the test results indicating a
blood-alcohol level at 0.133. Appellant objected, solely on the basis of relevance. Relevant
evidence is evidence having any tendency to make the existence of any fact of consequence
to the determination of the action more or less probable. Tex. R. Evid. 401. Clearly, to show
Appellant was intoxicated at the time of the stop, sixty or ninety minutes before the
intoxilyzer test, is relevant. To preserve error, a timely complaint must be made to the trial
court "with sufficient specificity to make the trial court aware of the complaint." Tex. R.
App. P. 33.1(a)(1)(A). Both parties to this appeal rely on Mata v. State, 46 S.W.3d 902 (Tex.
Crim. App. 2001). In Mata, the grounds for objection to the retrograde extrapolation was
"not reliable." Id. at 908. We believe the proper objection here was also that the basis of the
opinion was not reliable. (3) We do not believe the relevancy objection properly preserved
error. Tex. R. App. P. 33.1(a)(1)(A).

 Assuming, arguendo, that the grounds were preserved, Appellant's argument still
fails. He contends that the absence of evidence concerning what Appellant had eaten,
standing alone, produced error. We disagree. Here the expert knew many of Appellant's
personal characteristics. Finkley knew Appellant's sex, height, weight, what he drank, and
how much he claimed he had to drink. This sharply contracts with the total lack of variables
known in Mata. In Mata, the expert did not know the defendant's weight, how much he had
to drink or what he had to drink. Mata, 46 S.W.3d at 905-06, 915. Some scientists even
dispute whether the eating factor affects the outcome of retrograde extrapolation. Id. at 915-16. The Mata majority aptly observes: "Obviously, not every single personal fact about the
defendant must be known to the expert in order to produce an extrapolation with the
appropriate level of reliability." Id. at 916. Under the facts presented, we hold the trial court
did not abuse his function as "gatekeeper" by allowing this expert testimony. See Kelly v.
State, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992). Appellant's third issue is overruled. 

 The judgment of the trial court is affirmed.

December 11, 2003


 

 DON WITTIG, Senior Justice


Before Panel No. 5

Larsen, McClure, and Wittig, JJ.

(Wittig, J., sitting by assignment)


(Publish)



 
1. The first video tape, State's Exhibit 2, was admitted into evidence and is a part of the appellate record. 
This exhibit shows the in-car portion of the investigation, the initial conversation, and the portable breath test. 
State's exhibit 5, although discussed extensively by Appellant, is not part of the appellate record. The State contends
Exhibit 5 was not admitted into evidence. That appears to be the case.
2. Thus, that court would have been applying a de novo, or matter-of-law standard.
3. Appellant could also raise aspects of evidence Rules 701, 702, or 703. Likewise the objection could have
been to holdings of Mata v. State, 46 S.W.3d 902 (Tex. Crim. App. 2001); Kelly v. State, 824 S.W.2d 568, 572
(Tex. Crim. App. 1992); Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d
469 (1993) or similar authority.