NUMBER
13-04-055-CR

                                 COURT OF
APPEALS

                     THIRTEENTH DISTRICT OF
TEXAS

                         CORPUS CHRISTI B EDINBURG

 

ERICA HARDY,                                                                                 Appellant,

                                                             v.

THE STATE OF TEXAS,                                                                    Appellee.

 

 

                On appeal from the County Court at
Law No. 3

                                        of
Nueces County, Texas.

 

 

 

                                M
E M O R A N D U M   O P I N I O N

 

     Before Chief Justice
Valdez and Justices Hinojosa and Rodriguez

 

      Opinion by Chief
Justice Valdez

 

 

 








 

            Appellant, Erica Hardy, pled guilty
to the misdemeanor offense of driving while intoxicated, but reserved her right
to appeal the trial court=s denial of her motion to suppress.  Tex.
Pen. Code Ann. _ 49.04 (Vernon 2003).  Pursuant
to her negotiated plea, the trial court assessed punishment at 200 days in
jail, suspended for eighteen months of community supervision, and a $1,000
fine.  In a single issue, appellant
challenges the denial of her motion to suppress the breath-alcohol test.  We affirm the trial court=s ruling.

Facts

Corpus Christi Police Officer Pedro Trujillo pulled
appellant over for disregarding a stop sign. 
During questioning, Officer Trujillo noticed appellant=s bloodshot eyes and could smell alcohol on her
breath.  Upon being asked whether or not
she had been drinking, appellant admitted to having a glass of wine.  Officer Trujillo asked appellant to step out
of the vehicle so that he could administer a field sobriety test. Appellant
voluntarily complied and failed the field sobriety test.[1]  








Officer Trujillo testified that he followed proper
procedure in offering appellant the breathalyzer test by reading the required
statutory warnings.[2]  Appellant was placed in the back of the
patrol unit, whereupon she asked, Awhat happens if I pass [the test]?@  At trial,
appellant testified that Officer Trujillo=s response was AThen you can go. 
And if you fail, then you would lose your license and go in.@ Officer Trujillo testified that he thought that
appellant had asked him whether he would let her go if she took and passed the
breath test, and that his response to her was, Aif she
would pass the breath test she would probably be released.@  The
breathalyzer was later administered at the jail by someone other than Officer
Trujillo.  Appellant failed the test and
was arrested.

Standard of Review

In reviewing a trial court=s ruling on a motion to suppress, we apply the
bifurcated standard of review articulated in Guzman v. State, 955 S.W.2d
85, 89 (Tex. Crim. App. 1997).  We defer
to a trial court=s determination of historical facts, and review de
novo the trial court=s application of the law of search and seizure.  Carmouche v. State, 10 S.W.3d 323, 327
(Tex. Crim. App. 2000) (citing Guzman, 955 S.W.2d at 88-89).  If the issue involves the credibility of a
witness, we defer to a trial court=s ruling, as a trial court is in a better position
to evaluate the credibility of witnesses before it.  Guzman, 955 S.W.2d at 87, 89.  If the trial court is called upon to apply
the law to the facts, and the ultimate resolution of the issue does not turn on
an evaluation of the credibility and demeanor of a witness, we review that
issue de novo.  Id. at
89.  The issue before us does not turn on
disagreement of facts or evaluation of the credibility of a witness.  Therefore, we will utilize a de novo
standard of review to evaluate the trial court=s
decision on the motion to suppress.  See Guzman, 955 S.W.2d at 89. 

Motion to Suppress








Appellant contends the trial court erred in refusing
to suppress the results of her breathalyzer tests.  Specifically, appellant contends that Officer
Trujillo=s comment that she would be released if she passed
the test and that she would lose her license and Ago in@ if she failed the exam constitutes coercion that
renders her agreement to take the test 
involuntary .  Appellant further
observes that Ashe would not have taken the breath test but for
[Officer Trujillo] telling her that if she took the test and passed, she would
be released.@  Appellant
relies on the Texas Court of Criminal Appeals=
decision in Erdman v. State, 861 S.W.2d 890 (Tex. Crim. App. 1993).[3]








In Erdman, the Texas Court of Criminal
Appeals held that if an officer fails to recite the proper statutory warning to
the defendant before a breathalyzer or blood alcohol concentration test, the
defendant=s consent is involuntary as a matter of law.  Erdman, 861 S.W.2d at 893-94.  According to statute, however, officers may
only conduct breathalyzer or alcohol tests after a suspect has heard the
statutory warnings of the legal consequences of consenting or refusing to consent
and has given consent.  Id. at 893
(construing Tex. Rev. Civ. Stat. Ann.
Art. 6701l-5, ' 2 (Vernon 1977), now codified at Tex. Transp. Code Ann. '' 724.012, 724.013, 724.015 (Vernon 1999 & Supp.
2004-05)).  Additionally, in Erdman,
the court noted that Alaw enforcement officials must take care to warn DWI
suspects correctly about the actual, direct, statutory consequences of
refusal.  Any other information conveyed
to DWI suspects may have the effectBeither intended or unintendedBof undermining their resolve and effectively
coercing them to consent.@  Id. at
894.  Erdman was told of
the consequences of passing and failing the breathalyzer test. See id. at
891.  He was also told, however, of the
consequences of refusing the test.  See
id.  The court of criminal
appeals focused its analysis exclusively on the coerciveness of those
extra-statutory warnings concerning the consequences of refusing the test. See
id. at 893-94. 

As the court in Sandoval v. State, 17 S.W.3d
792, 795 (Tex. App.BAustin
2000, pet. ref'd), points out, Texas case law in this area, both before and
after Erdman, has generally focused only on extra-statutory
warnings of consequences of refusing a breath test.  See, e.g., Erdman, 861 S.W.2d at
893-94; Tex. Dep=t
of Pub. Safety v. Rolfe,
986 S.W.2d 823, 826 (Tex. App.BAustin
1999, no pet.); see also Ewerokeh v. State, 835 S.W.2d 796, 796
(Tex. App.BAustin 1992, pet. ref=d);
Sells v. State, 798 S.W.2d 865, 866 (Tex. App.BAustin
1990, no pet.) (pre-Erdman cases also considering extra-statutory
warnings of refusal to take test).

In Sandoval, a DWI suspect asked the arresting
officer what consequences would follow if he passed the breath test. Sandoval,
17 S.W.3d at 794.  The officer told the suspect that a family
member could come to pick him up if he passed, but that he would be charged
with DWI if he did not pass, whereupon the suspect agreed to take test, which
proved positive for alcohol.  Id.  Sandoval filed a pretrial motion to suppress
the test results on the grounds that he had been coerced, and that his consent
was therefore involuntary.  Id.  In affirming the trial court's refusal to
grant the motion to suppress, the Austin Court of Appeals concluded that the
officer's statements to Sandoval about the consequences of passing or failing
the breath test were not of the same coercive nature as those in Erdman,
which had been premised solely on the consequences of refusing to submit to the
test.  See id. at 797. 








Analysis

Officer Trujillo=s statement to appellant falls far short
of the officer=s 
statements found to be coercive in Erdman.  Officer Trujillo did not make any statements
about the consequences of appellant=s refusal to take a breath test beyond
those listed in section 724.015 of the transportation code.  By merely answering appellant=s question, Officer Trujillo did not
warn appellant that dire consequences would follow if she refused to take the
breath test.  Furthermore, Officer
Trujillo did not make any extra-statutory assertions about the possible consequences
of refusing to submit to the test. 
Accordingly, Officer Trujillo did not coerce appellant to consent.            Officer Trujillo=s statement to appellant is similar to
those made by the officer in Sandoval and, unlike the statements found
to be coercive in Erdman, his statement did not address the unfavorable
consequences that would occur if appellant refused to submit to the test.  Rather, as the trial court pointed out,
Officer Trujillo simply answered a question by the appellant, which addressed
the question of what would happen to her if she took the test and passed.  Officer Trujillo provided a factually correct
answer in that if she passed the test she would not be charged with DWI.  Although appellant testified that
the reason she agreed to the breath test was because of Officer Trujillo=s
answer, the trial court did not err in denying appellant=s
motion to suppress, given the surrounding circumstances showing that Officer
Trujillo gave appellant the correct statutory warnings before administering
appellant's breath test.  Appellant=s
personal interpretation of those warnings is not relevant to the question of
coercion.








As there is no argument that Officer Trujillo failed
to correctly give appellant the proper statutory warnings, we conclude that the
trial court did not err by finding that appellant was not induced or coerced to
submit a breath sample for testing.  See
Guzman, 955 S.W.2d at 89.  

Conclusion  We overrule
appellant=s sole issue on appeal and AFFIRM the judgment of the
trial court.   

 

 

 

 

 

                                           

Rogelio Valdez,

Chief Justice

 

 

Do not publish.

Tex. R. App. P. 47.2(b).

 

 

Memorandum Opinion
delivered and filed

this 4th day
of August, 2005.











[1]Appellant was subsequently asked to
re-perform the sobriety test in the video room at the jail, and she failed that
test as well. 





[2]See Tex. Transp. Code Ann. ' 724.015 (1), (2) (Vernon Supp.
2004-05). 





[3]Appellant cites, but not does not
discuss, one other case in her brief:  State
v. Serrano, 894 S.W.2d 74 (Tex. App.BHouston [14th Dist.] 1995, no pet.). Serrano,
however, is distinguishable because of the timing of the nonstatutory
information given by the arresting officer. 
The appellate court in Serrano upheld the trial court=s decision, under the circumstances
of that case, to find coercion and grant a new trial.  Id. at 76.  In Serrano, unlike the present case,
the nonstatutory information was given as the officer=s primary warning.  Id. The passage of two hours between the
coercive statement made by the officer at the scene and the administration of
the proper statutory warnings by a different officer at the county jail did not
remove the initial taint.  Id.  Although the nonstatutory information
conveyed to the suspects is the same in both cases, the circumstances in which
it was given are distinguishable.