

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-11-00087-CR

_____

CASEY RAY FIENEN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law
Fannin County, Texas
Trial Court No. 44845

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

## I.      Background

Casey Ray Fienen appeals from his conviction for DWI.   Fienen was arrested by Texas Department of Public Safety Officer Carmen Barker after field sobriety tests and a portable breathalyzer test were administered.   Fienen was handcuffed and placed in the patrol vehicle after having been arrested.[1]   Once inside the vehicle, Barker provided the warnings required by statute to be given to an arrested person and apprised Fienen of the consequences of refusing to provide a blood or breath specimen.   After having provided the statutory warnings, Barker asked Fienen for a breath specimen.   Fienen refused.   Barker then asked Fienen for a specimen of his blood, to which he responded, "No ma'am."

While Fienen was seated next to Barker in the front seat of the patrol vehicle, Barker contacted dispatch with a request to contact the county judge so that a blood search warrant could be executed.   After having overheard this request, Fienen asked Barker, "You take blood from my arm or I blow again?"   Barker responded that since Fienen refused to provide a breath or blood specimen, what would happen next was, "We contact [the county judge], he meets us at the hospital, and we take your blood."   Fienen then inquired if this would be done "even though it is against my religion?" to which Barker replied, "Yes."   Fienen then indicated he would give a breath specimen, stating, "You aint taking my blood, that's crazy.   I hate needles . . . I'm just deathly terrified of needles."   Barker confirmed, "So you do want to give a specimen of your

_____
[1]No issue has been presented to this Court questioning probable cause for the arrest.

2

breath?" Fienen consented. After Barker radioed dispatch to cancel the request for the judge, Fienen withdrew his consent. Barker then asked him if he would sign a form indicating his refusal to give a specimen. In response, Fienen questioned, "If we go to the hospital, you're going to hold me down and take my blood?" Barker responded, "Yes, sir." Fienen queried, "Or I blow in the machine." Barker responded, "Correct." Fienen then consented to the breathalyzer.

After the trial court overruled Fienen's motion to suppress evidence, he entered a plea of guilty and was sentenced to six months' confinement probated for twelve months, and was fined $1,500.00. In a single issue, Fienen contends the trial court abused its discretion in denying his motion to suppress the results of the breathalyzer test because his consent was involuntary and the result of coercion.

## II. Motion to Suppress

### A. Standard of Review

We review the trial court's decision on a motion to suppress evidence by applying a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We defer to the trial court's determination of historical facts that depend on credibility, but review de novo the trial court's application of the law. *Amador*, 221 S.W.3d at 673; *Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007). This "deferential standard of review in *Guzman* also applies to a trial court's determination of historical facts when that determination is based on a videotape recording

3

admitted into evidence at a suppression hearing." *Amador*, 221 S.W.3d at 673.   We afford the same level of deference to a trial court's ruling on "application of law to fact questions," or "mixed questions of law and fact," if the resolution of those questions turns on an evaluation of credibility and demeanor.   *Id.*   We review de novo mixed questions of law and fact that do not depend on credibility and demeanor.   *Id.*

### B.  Consent Was Not Coerced

Fienen contends the trial court erred in refusing to suppress the result of his breathalyzer test.   Specifically, Fienen contends that Barker's statements that she would obtain a search warrant to forcibly seize his blood constituted an extra-statutory warning that related to the consequences of not providing a breath specimen, which impacted his decision to provide such a specimen.   Fienen contends he would not have taken the breath test but for Barker telling him that if he did not take the test, blood would forcibly be drawn from his body.

The implied consent statute provides that a person arrested for suspected DWI is deemed to have consented to providing specimens for a breath or blood test.   TEX. TRANSP. CODE ANN. § 724.011(a) (West 2011).   However, the person retains an absolute right (subject to certain exceptions not relevant here) to refuse a test.   TEX. TRANSP. CODE ANN. § 724.013 (West 2011). Before an officer can request a breath or blood sample, that officer must inform an adult person arrested for DWI orally and in writing of the following statutory warnings:   (1) evidence of the refusal will be admissible against the person in court, and (2) the person's driver's license will be

4

suspended for not less than 180 days.   TEX. TRANSP. CODE ANN. § 724.015(1), (2) (West 2011);

*Erdman v. State*, 861 S.W.2d 890, 893 (Tex. Crim. App. 1993) (applying former version of

Section 724.015 imposing ninety-day suspension).   The person must likewise be informed of the

possible consequences if he or she submits to the test and the results of the test show a prohibited

blood-alcohol level.   *See* TEX. TRANSP. CODE ANN. § 724.015(3), (4).

The decision to submit to a breath or blood test must be voluntary and made with an

understanding of the statutory consequences of refusal.   *Erdman*, 861 S.W.2d at 893.   Consent is

not voluntary if it is the result of physical or psychological pressures brought to bear by law

enforcement officials.   *Id.*; *Sandoval v. State*, 17 S.W.3d 792, 795 (Tex. App.—Austin 2000, pet.

ref'd).   As stated in *Erdman*:

> [A] suspect's decision to submit to a breath test must truly be her own, made freely
> and with a correct understanding of the actual statutory consequences of refusal.
> To be "voluntary" and thus consistent with the statutory scheme, a suspect's
> decision to submit must not be the result of physical or psychological pressures
> brought to bear by law enforcement officials.

861 S.W.2d at 893.

In *Erdman*, the defendant was given the proper statutory warnings before giving a breath

specimen, but was also advised that the failure to provide the specimen would result in DWI

charges being filed against him and that he would be placed in jail that night.   *Id.* at 891.   Consent

to the breath test was given after this additional information was provided.   *Id.* at 893–94.   The

court expressed its concern that giving this type of non-statutory information "would normally

result in considerable psychological pressure upon a D.W.I. suspect to consent to the taking of a breath sample." *Id.* at 894. In light of this concern, the *Erdman* court concluded that the trial court abused its discretion by refusing to suppress the breath test results. *Id.* at 894. The lesson of *Erdman* is that law enforcement officials "must take care to warn D.W.I. suspects correctly about the actual, direct, *statutory* consequences of refusal. Any other information conveyed . . . may have the effect—either intended or unintended—of undermining their resolve and effectively coercing them to consent." *Id.*

Here, the State disputes the bedrock issue of whether Barker, in fact, issued *any* extra-statutory warnings. The sequence of events reveals that Fienen was warned both orally and in writing of the statutorily required consequences of refusal to provide a breath or blood sample. Only after the statutorily required warnings were provided did Fienen refuse to provide a breath or blood specimen. Subsequent to his refusal to provide a specimen, Barker initiated the process of obtaining a search warrant for a specimen of Fienen's blood.

After Barker contacted dispatch to initiate the process of obtaining a warrant, Fienen asked whether blood would be taken if he did not "blow again." Barker advised Fienen that he would be taken to the hospital where they would meet the county judge, and blood would be drawn. Fienen agreed to provide a breath specimen, but then retracted his consent and asked Barker (should he be taken to the hospital) whether he would be held down while blood was taken from his arm; she indicated that would be the case.

6

The caselaw has distinguished two categories of misstatements regarding extra-statutory warnings—those warnings that relate to consequences of refusing to provide a breath specimen and those warning of consequences of passing or failing a breath test. Statements regarding the consequences of passing or failing a breath test "are not of the same coercive nature" as statements about the consequences of refusing to take a breath test. *Gette v. State*, 209 S.W.3d 139, 145 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Ness v. State*, 152 S.W.3d 759, 763 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd); *Sandoval v. State*, 17 S.W.3d 792, 797 (Tex. App.—Austin 2000, pet. ref'd). Warnings that relate to the consequences of passing or failing a breath test require proof of a causal connection between the warning and the decision to submit to the test. *State v. Woehst*, 175 S.W.3d 329, 332–33 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *Urquhart v. State*, 128 S.W.3d 701, 705 (Tex. App.—El Paso 2003, pet. ref'd). Conversely, when inherently coercive warnings are made regarding the consequences of refusing to provide a breath specimen, the accused need not show a causal connection between the improper warning and the decision to submit to a breathalyzer. *See Erdman*, 861 S.W.2d at 894 (given lack of evidence showing warning had no bearing on consent, "no rational factfinder could conclude that the State carried its burden of showing that appellant's consent was voluntary").

Fienen contends the foregoing sequence of events reveals that he was given an *Erdman*-type warning of the consequences of refusing to submit to a breath or blood test. We disagree, finding the present case can be distinguished from *Erdman*.

7

First, Barker did not attempt to advise Fienen of extra-statutory consequences which might result from his refusal to provide a breath or blood sample. Once Fienen declined to provide the requested sample, Barker simply began with her work of contacting dispatch to obtain a warrant for a blood specimen. The discussion between Barker and Fienen was initiated by Fienen—Barker's warnings were concluded. Fienen's questioning was prompted by Barker's comments to dispatch requesting a warrant—the logical progression of handling the case. Even though she was not required to do so, Barker fairly responded to Fienen's questions. We do not believe it is accurate, under these circumstances, to classify Barker's responses as coercive under *Erdman*, where there was no questioning initiated by the suspect, resulting in the provision of information later claimed to be coercive. Barker's responses to Fienen's unprompted inquiries were not warnings, and thus were not coercive.

Next, at the time of Fienen's arrest, Section 724.015 of the Texas Transportation Code provided that the only consequences of refusal to provide a specimen about which a suspect could be warned were (1) that refusal to provide a specimen may be admissible in a subsequent prosecution and (2) that refusal to provide a specimen will result in the suspension of the suspect's driver's license. TEX. TRANSP. CODE ANN. § 724.015(1), (2). Since that time, the statute has been amended to provide an additional warning of the consequences of refusing to provide a specimen—the officer may apply for a warrant authorizing a specimen to be taken from the

8

suspect. Tᴇx. Tʀᴀɴsᴘ. Cᴏᴅᴇ Aɴɴ. § 724.015(3).[2] Fienen's argument is that the exact warning that the officer is now required by statute to give the accused was, at the time of this arrest, coercive. Even though this amendment was not in effect at the time of Feinen's arrest, we are not prepared to find that the additional statutory warning is coercive.

Finally, a video recording of the exchange between Barker and Fienen was preserved and reviewed by the trial court and this Court. Barker's demeanor as depicted in the video of Fienen's arrest further informs this Court of the trial court's decision. Based on that video, the trial court could have found that Barker presented a professional demeanor throughout the entirety of her encounter with Fienen and was simply trying to do her job, although repeatedly questioned and interrupted by Fienen. We do not believe the trial court abused its discretion in admitting the evidence.

## III. Conclusion

We affirm the judgment of the trial court.


Jack Carter
Justice


Date Submitted:  October 6, 2011
Date Decided:  October 18, 2011

---

[2]Section 724.015 was amended to require a warning that "if the person refuses to submit to the taking of a specimen, the officer may apply for a warrant authorizing a specimen to be taken from the person." Act of May 23, 2011, 82nd Leg., R.S., ch. 674, § 1, 2011 Tex. Sess. Law Serv. 1627 (West) (to be codified as an amendment to Tᴇx. Tʀᴀɴsᴘ. Cᴏᴅᴇ Aɴɴ. § 724.015(3) (amendment effective September 1, 2011).

9

Do Not Publish