In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00087-CR

                                                ______________________________

 

 

                                      CASEY RAY FIENEN,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                            On Appeal from the County Court at Law

                                                             Fannin County, Texas

                                                            Trial
Court No. 44845

 

                                                                   
                               

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                      MEMORANDUM OPINION

 

I.          Background

 

            Casey Ray
Fienen appeals from his conviction for DWI.  Fienen was arrested by Texas Department of
Public Safety Officer Carmen Barker after field sobriety tests and a portable
breathalyzer test were administered. 
Fienen was handcuffed and placed in the patrol vehicle after having been
arrested.[1]  Once inside the vehicle, Barker provided the
warnings required by statute to be given to an arrested person and apprised
Fienen of the consequences of refusing to provide a blood or breath
specimen.  After having provided the statutory
warnings, Barker asked Fienen for a breath specimen.  Fienen refused.  Barker then asked Fienen for a specimen of
his blood, to which he responded, “No ma’am.” 


            While Fienen
was seated next to Barker in the front seat of the patrol vehicle, Barker
contacted dispatch with a request to contact the county judge so that a blood
search warrant could be executed.  After
having overheard this request, Fienen asked Barker, “You take blood from my arm
or I blow again?”  Barker responded that
since Fienen refused to provide a breath or blood specimen, what would happen
next was, “We contact [the county judge], he meets us at the hospital, and we
take your blood.”  Fienen then inquired
if this would be done “even though it is against my religion?” to which Barker
replied, “Yes.”  Fienen then indicated he
would give a breath specimen, stating, “You aint taking my blood, that’s
crazy.  I hate needles . . . I’m just
deathly terrified of needles.”  Barker
confirmed, “So you do want to give a specimen of your breath?”  Fienen consented.  After Barker radioed dispatch to cancel the
request for the judge, Fienen withdrew his consent.  Barker then asked him if he would sign a form
indicating his refusal to give a specimen. 
In response, Fienen questioned, “If we go to the hospital, you’re going
to hold me down and take my blood?” 
Barker responded, “Yes, sir.” 
Fienen queried, “Or I blow in the machine.”  Barker responded, “Correct.”  Fienen then consented to the
breathalyzer.  

            After the
trial court overruled Fienen’s motion to suppress evidence, he entered a plea
of guilty and was sentenced to six months’ confinement probated for twelve
months, and was fined $1,500.00.  In a
single issue, Fienen contends the trial court abused its discretion in denying
his motion to suppress the results of the breathalyzer test because his consent
was involuntary and the result of coercion. 


II.       Motion to Suppress

 

            A.        Standard
of Review

 

            We review
the trial court’s decision on a motion to suppress evidence by applying a
bifurcated standard of review.  Amador v. State, 221 S.W.3d 666, 673
(Tex. Crim. App. 2007);  Guzman v. State, 955 S.W.2d 85, 89 (Tex.
Crim. App. 1997).  We defer to the trial
court’s determination of historical facts that depend on credibility, but
review de novo the trial court’s application of the law.  Amador,
221 S.W.3d at 673; Wiede v. State,
214 S.W.3d 17, 25 (Tex. Crim. App. 2007). 
This “deferential standard of review in Guzman also applies to a trial court’s determination of historical
facts when that determination is based on a videotape recording admitted into
evidence at a suppression hearing.”  Amador, 221 S.W.3d at 673.   We afford the same level of deference to a
trial court’s ruling on “application of law to fact questions,” or “mixed
questions of law and fact,” if the resolution of those questions turns on an
evaluation of credibility and demeanor.  Id.  We
review de novo mixed questions of law and fact that do not depend on
credibility and demeanor.  Id.

            B. 
Consent Was Not Coerced

 

            Fienen contends the trial court
erred in refusing to suppress the result of his breathalyzer test.  Specifically, Fienen contends that Barker’s
statements that she would obtain a search warrant to forcibly seize his blood constituted
an extra-statutory warning that related to the consequences of not providing a
breath specimen, which impacted his decision to provide such a specimen.  Fienen contends he would not have taken the
breath test but for Barker telling him that if he did not take the test, blood
would forcibly be drawn from his body.  

            The implied consent statute provides
that a person arrested for suspected DWI is deemed to have consented to
providing specimens for a breath or blood test.  Tex.
Transp. Code Ann. § 724.011(a) (West 2011).   However, the person retains an absolute right
(subject to certain exceptions not relevant here) to refuse a test.  Tex.
Transp. Code Ann. § 724.013 (West 2011).  Before an officer can request a breath or
blood sample, that officer must inform an adult person arrested for DWI orally
and in writing of the following statutory warnings:  (1) evidence of the refusal will be
admissible against the person in court, and (2) the person’s driver’s license
will be suspended for not less than 180 days.  Tex.
Transp. Code Ann. § 724.015(1), (2) (West 2011); Erdman v. State, 861 S.W.2d 890, 893 (Tex. Crim. App. 1993) (applying
former version of Section 724.015 imposing ninety-day suspension).  The person must likewise be informed of the
possible consequences if he or she submits to the test and the results of the
test show a prohibited blood-alcohol level.  See Tex.
Transp. Code Ann. § 724.015(3), (4).

            The decision
to submit to a breath or blood test must be voluntary and made with an
understanding of the statutory consequences of refusal.  Erdman,
861 S.W.2d at 893.  Consent is not
voluntary if it is the result of physical or psychological pressures brought to
bear by law enforcement officials.  Id.;
Sandoval v. State, 17 S.W.3d 792, 795 (Tex. App.—Austin 2000, pet. ref’d).  As stated in Erdman:

[A] suspect’s decision to submit to a breath
test must truly be her own, made freely and with a correct understanding of the
actual statutory consequences of refusal.  To be “voluntary” and thus consistent with the
statutory scheme, a suspect’s decision to submit must not be the result of
physical or psychological pressures brought to bear by law enforcement
officials.

 

861 S.W.2d at 893.  

 

            In Erdman, the defendant was given the proper
statutory warnings before giving a breath specimen, but was also advised that
the failure to provide the specimen would result in DWI charges being filed
against him and that he would be placed in jail that night.  Id.
at 891.  Consent to the breath test was
given after this additional information was provided.  Id. at 893–94.  The court expressed its concern that giving this
type of non-statutory information “would normally result in considerable
psychological pressure upon a D.W.I. suspect to consent to the taking of a
breath sample.”  Id. at 894.  In light of this concern, the Erdman court concluded that the trial
court abused its discretion by refusing to suppress the breath test results.  Id. at 894.  The lesson of Erdman is that law enforcement officials “must take care to warn
D.W.I. suspects correctly about the actual, direct, statutory consequences of refusal. 
Any other information conveyed . . . may have the effect—either intended
or unintended—of undermining their resolve and effectively coercing them to
consent.”  Id.  

            Here, the
State disputes the bedrock issue of whether Barker, in fact, issued any extra-statutory warnings.   The sequence of events reveals that Fienen
was warned both orally and in writing of the statutorily required consequences
of refusal to provide a breath or blood sample. 
Only after the statutorily required warnings were provided did Fienen
refuse to provide a breath or blood specimen. 
Subsequent to his refusal to provide a specimen, Barker initiated the
process of obtaining a search warrant for a specimen of Fienen’s blood.  

            After Barker
contacted dispatch to initiate the process of obtaining a warrant, Fienen asked
whether blood would be taken if he did not “blow again.”  Barker advised Fienen that he would be taken
to the hospital where they would meet the county judge, and blood would be
drawn.  Fienen agreed to provide a breath
specimen, but then retracted his consent and asked Barker (should he be taken
to the hospital) whether he would be held down while blood was taken from his
arm; she indicated that would be the case. 

            The caselaw
has distinguished two categories of misstatements regarding extra-statutory
warnings—those warnings that relate to consequences of refusing to provide a
breath specimen and those warning of consequences of passing or failing a
breath test.  Statements regarding the
consequences of passing or failing a breath test “are not of the same coercive
nature” as statements about the consequences of refusing to take a breath test.
 Gette
v. State, 209 S.W.3d 139, 145 (Tex. App.—Houston [1st Dist.] 2006, no
pet.); Ness v. State, 152 S.W.3d 759,
763 (Tex. App.—Houston [1st Dist.] 2004, pet. ref’d); Sandoval v. State, 17 S.W.3d 792, 797 (Tex. App.—Austin 2000, pet. ref’d).  Warnings that relate to the consequences of
passing or failing a breath test require proof of a causal connection between
the warning and the decision to submit to the test.  State
v. Woehst, 175 S.W.3d 329, 332–33 (Tex. App.—Houston [1st Dist.] 2004, no
pet.); Urquhart v. State, 128 S.W.3d
701, 705 (Tex. App.—El Paso 2003, pet. ref’d). 
Conversely, when inherently coercive warnings are made regarding the
consequences of refusing to provide a breath specimen, the accused need not
show a causal connection between the improper warning and the decision to
submit to a breathalyzer.  See Erdman,
861 S.W.2d at 894 (given lack of evidence showing warning had no bearing on
consent, “no rational factfinder could conclude that the State carried its
burden of showing that appellant’s consent was voluntary”).

            Fienen
contends the foregoing sequence of events reveals that he was given an Erdman-type warning of the consequences
of refusing to submit to a breath or blood test.  We disagree, finding the present case can be
distinguished from Erdman. 

            First,
Barker did not attempt to advise Fienen of extra-statutory consequences which
might result from his refusal to provide a breath or blood sample.  Once Fienen declined to provide the requested
sample, Barker simply began with her work of contacting dispatch to obtain a
warrant for a blood specimen.  The
discussion between Barker and Fienen was initiated by Fienen—Barker’s warnings
were concluded.  Fienen’s questioning was
prompted by Barker’s comments to dispatch requesting a warrant—the logical
progression of handling the case.  Even
though she was not required to do so, Barker fairly responded to Fienen’s
questions.  We do not believe it is
accurate, under these circumstances, to classify Barker’s responses as coercive
under Erdman, where there was no
questioning initiated by the suspect, resulting in the provision of information
later claimed to be coercive.  Barker’s
responses to Fienen’s unprompted inquiries were not warnings, and thus were not
coercive.  

            Next, at the
time of Fienen’s arrest, Section 724.015 of the Texas Transportation Code
provided that the only consequences of refusal to provide a specimen about
which a suspect could be warned were (1) that refusal to provide a specimen may
be admissible in a subsequent prosecution and (2) that refusal to provide a
specimen will result in the suspension of the suspect’s driver’s license.  Tex.
Transp. Code Ann. § 724.015(1), (2).  
Since that time, the statute has been amended to provide an additional
warning of the consequences of refusing to provide a specimen—the officer may
apply for a warrant authorizing a specimen to be taken from the suspect.  Tex.
Transp. Code Ann. § 724.015(3).[2]  Fienen’s argument is that the exact warning
that the officer is now required by statute to give the accused was, at the
time of this arrest, coercive.  Even
though this amendment was not in effect at the time of Feinen’s arrest, we are
not prepared to find that the additional statutory warning is coercive.    

            Finally, a video recording of the
exchange between Barker and Fienen was preserved and reviewed by the trial
court and this Court.  Barker’s demeanor
as depicted in the video of Fienen’s arrest further informs this Court of the
trial court’s decision.  Based on that
video, the trial court could have found that Barker presented a professional
demeanor throughout the entirety of her encounter with Fienen and was simply
trying to do her job, although repeatedly questioned and interrupted by
Fienen.  We do not believe the trial
court abused its discretion in admitting the evidence.    

III.       Conclusion

 

            We affirm the judgment of the
trial court.

             

 

 

                                                                                    Jack
Carter

                                                                                    Justice

 

Date Submitted:          October
6, 2011          

Date Decided:             October
18, 2011

 

Do Not Publish           

 

 

 

 

            

 

 











[1]No
issue has been presented to this Court questioning probable cause for the
arrest. 





[2]Section
724.015 was amended to require a warning that “if the person refuses to submit
to the taking of a specimen, the officer may apply for a warrant authorizing a
specimen to be taken from the person.” 
Act of May 23, 2011, 82nd Leg., R.S., ch. 674, § 1, 2011 Tex. Sess. Law
Serv. 1627 (West) (to be codified as an amendment to Tex. Transp. Code Ann. § 724.015(3) (amendment effective
September 1, 2011).